STATE vs. LEICHAM.

CRIMINAL LAW: INFORMATIONS. *(1) Legislative control over criminal informations. (2) Preliminary examination; what sufficient. (3) Discretion of district attorney as to crime charged in information. (4) Absence of preliminary examination, how shown. (5, 6) Several counts; compelling prosecution to elect.*

CRIMINAL LAW: CONVERSION BY AGENT. *(7–10) Larceny by conversion, under sec. 27, ch. 165, R. S.; essentials of the crime; instructions in such a case. (11) Effect of later act, ch. 85 of 1873.*

I. Since the amendment, in 1870, of sec. 8, art. I of the state constitution, the legislature of this state seems to have full power to prescribe by whom, in what manner, and under what circumstances, an information may be exhibited against any person for any criminal offense.

2. Assuming (what is probably true, but is not decided) that under the laws of this state (Laws of 1871, ch. 137, sec. 7; Tay. Stats., 1930, § 32), a district attorney cannot lawfully file an information against any person not a fugitive from justice, without a preliminary examination before a committing magistrate, a *formal adjudication* by the magistrate that the offense has been committed, and that there is probable cause to believe the accused guilty thereof, is not required (R. S., ch. 176, sec. 19; Tay. Stats., 1920, § 19), but it is enough that upon such examination (or a waiver thereof) the accused has been, by such magistrate, held to bail, or committed, to answer for an offense.

3. Under ch. 190 of 1875, where the accused has been thus held to bail or committed, the information filed by the district attorney need not be for the offense charged in the complaint before the magistrate, but may be for any offense which the testimony taken on the examination shows the accused to have committed; and the district attorney is not bound by the opinion or adjudication of the magistrate as to what crime has been committed, but may exhibit an information as for a felony, if in his opinion the testimony so taken proves the accused guilty thereof, though the magistrate may find him guilty of a misdemeanor only.

State vs. Leicham.

4. The fact that there has been a preliminary examination need not be stated in the information, or shown affirmatively by the prosecution (*Peterson v. The State*, unreported); and when the defendant relies upon the absence of such an examination, *it seems* that the better practice is to plead it in abatement before pleading to the merits; and, if issue is joined on such a plea, the burden of proof is upon the accused.

5. It is a matter within the discretion of the trial court, whether the district attorney shall be required to elect upon which of several counts in the information he will proceed; and the determination of that court will not be reversed, except for an abuse of discretion.

6. In an information under sec. 27, ch. 165, R. S., one count was for larceny by a fraudulent conversion of *chattels*, which came into defendant's possession as an agent, and a second count was for larceny by a like conversion of *money* received by him as such agent; and it was admitted that both counts were based upon the same transaction. *Held*, that there was no error in refusing to require the prosecution to elect, before the evidence was in, on which count it would proceed.

7. Defendant, being in possession of certain machines as agent of the owners for their sale, etc., and bound by his contract with them to sell upon certain terms and conditions, sold to M. some of said machines for the purpose of getting money from M. with which to pay, and with which, pursuant to a stipulation with M., he did immediately pay, an indebtedness of his own, for which M. was surety. M. took and held possession of the machines, having stipulated with defendant that the latter might purchase them back by repaying the money so advanced. These transactions were without the consent or knowledge of defendant's principals, and in violation of the terms of his contract with them, and he has never accounted to them for such machines; and the evidence excludes the supposition that he did not know that the machines were their property, which he was converting to his own use. *Held*, that the fact (if shown) that defendant believed, when he converted the property, that he would be able to pay, and intended to pay, the owners for it when he should be required to account for it, does not relieve the act of its fraudulent and criminal character.

8. The foregoing facts being proven, the court did not err in refusing to charge that if defendant so construed the written contract (with his employers) that he honestly supposed he had a right to sell the machines and use the proceeds, and afterwards account to the owners, and if in the transaction he acted under that impression and in good faith, the jury should not find him guilty.

9. Nor was it error to instruct the jury, in such a case, that if, at the time alleged, defendant sold any of said machines, or turned them out as security for the purpose of paying his own indebtedness, without the consent

State vs. Leicham.

of his principals, he was guilty as charged in the first count of the information.

10. The case distinguished from *Comm. v. Stearns*, 2 Met., 343, and *Comm. v. Libbey*, 11 id., 64, decided under a like statute, by the fact that there was here a special agency, and that the right of property and the possession remained in the principals.

11. Whether ch. 85 of 1873 supersedes, in a case like this, sec. 27, ch. 165, R. S., under which the information was drawn, and reduces the offense to a misdemeanor, and whether, consequently, only the punishment prescribed by the act of 1873 can be inflicted, cannot be determined upon exceptions taken before judgment, but only on an appeal from the judgment.

ON EXCEPTIONS from the Circuit Court for *Sauk* County.

An information was filed in the circuit court by the district attorney, under sec. 27, ch. 165, R. S. (Tay. Stats., 1844, § 30), charging that the defendant had committed the crime of larceny, by fraudulently converting to his own use three seed-sowers or cultivators, of the value of $225, the property of the copartnership of Van Brunt, Barber & Co., which machines came into his possession by virtue of his employment by that firm as its agent to sell the same. The information contains a second count under the same statute, for the fraudulent conversion of $130 of the money of such firm, received by the defendant as such agent, by virtue of such employment.

At the commencement of the trial, the defendant moved the court to require the district attorney to elect on which count of the information he would proceed, but the court refused to do so. The district attorney conceded, however, that there could be a conviction on but one of the counts; and after the testimony was all in, he elected to abandon the second count, and to proceed on the first count alone.

The jury found the defendant guilty on the first count, and the court overruled a motion in arrest of judgment and a motion for a new trial. Thereupon the defendant exhibited ex-

ceptions to certain rulings and directions of the court on the trial in matters of law, which exceptions were, during the same term, reduced to writing and allowed and signed by the judge, in accordance with the statute. R. S., ch. 180, sec. 7. The defendant duly recognized, as required by sec. 9, and the circuit court granted a stay of proceedings until the exceptions should be determined by this court.

A further statement of the case, with the exceptions relied upon by the defendant, will be found in the opinion.

*Burr W. Jones*, for the defendant, argued that, the examination before the magistrate having been upon a charge of "improperly disposing of property by an agent," under ch. 85 of 1873, and that being only a misdemeanor, to which a comparatively slight punishment is attached, it was not competent for the district attorney to bring the defendant to trial upon an information drawn under sec. 30, ch. 165, Tay. Stats., for a felony, punishable, as the prosecution claims, by confinement for not less than a year in the state prison. It is true that ch. 190 of 1875 purports to confer upon the district attorney a very wide and a very dangerous discretion; but, (1) Even under that statute he exceeds his jurisdiction when he files an information not supported by the "written testimony" taken on the examination; and it is submitted that such testimony in this case did not support a charge of larceny. (2) The statute of 1875 is subject to the declaration of rights (Const. of Wis., art. I, sec. 7), which gives the accused the right to know the nature and cause of the accusation against him; and this constitutional right is meaningless if there is not some limit to the discretion which the prosecuting officer may exercise in filing informations for offenses of a different character and grade from those charged; and if there is any limit, this is a case in which it should be defined. 2. That ch. 85 of 1873 in part repeals the earlier statute; or that, at least, where the trial discloses a state of facts and an offense such as is covered by the act of 1873, even though it

may also be under the terms of the earlier statute, the lighter punishment imposed by the later statute can alone be inflicted. *Scrinegrour v. The State*, 1 Chand., 48.  3. That the circuit court had no jurisdiction, because the defendant had not been held to trial by the *lawful* order of an examining magistrate. The record of the examining magistrate states that he " finds from the testimony reason to believe the defendant guilty of larceny." But the statute (Tay. Stats., ch. 176, § 19) requires the magistrate to adjudge " that an offense has been committed, and that there is *probable cause* to believe the prisoner guilty." Such an adjudication is necessary to confer jurisdiction upon the circuit court. The information alone cannot confer jurisdiction, because it cannot lawfully be filed until after such an examination as the statute prescribes. Sec. 7, ch. 137 of 1871. The finding of the magistrate under the present system seems no less important and jurisdictional than was the finding of the grand jury under the former system. If in a mere quasi-criminal action importance is to be attached to the finding of the magistrate as affecting the jurisdiction of the circuit court (*State v. Braun*, 31 Wis., 601), it would be remarkable that his finding and adjudication should be treated as a mere matter of form in an action like the present.  4. That the court erred in not requiring the prosecuting attorney to elect before the trial upon which count of the information he would proceed. In cases of felony, where it is plain, as in this case, that a refusal to compel an election may confuse the prisoner and distract the jury, such refusal is error. If the prisoner must hear a mass of testimony against him raising vague suspicions of numerous offenses, and must enter upon his evidence in defense without knowing which of several charges he is to defend against, that constitutional provision which gives him the right to know the nature and cause of the accusation against him becomes a form of idle words. *State v. Fee*, 19 Wis., 565; *State v. Gummer*, 22 id., 441; 1 Bish. Cr. Pr. (1st ed.), 213; id. (2d ed.), 422.

5. That the court erred in its instructions to the jury, as, (1.) In instructing them that under the contract the defendant was an agent, whereas the question of agency was one of fact for the jury. (2.) In charging, substantially, that if defendant sold the property and used the proceeds without the consent of his employers, he was guilty of embezzlement; ignoring the fact that defendant had a right to construe the contract for himself in his dealings with his employers, and that though an error of judgment on his part might not avoid a civil liability, yet such error, committed in good faith, might be a perfect defense to a criminal action, the felonious intent being a necessary element of the crime. The evidence shows a course of dealing between the parties, in which, notwithstanding the written contract, a large discretion was vested in the defendant, as is almost invariably the case, and necessarily so where such contracts are entered into. Defendant received different payment from that required in the contract, and in various ways the employers ratified his acts. Under such circumstances, it was error to instruct the jury that the defendant was guilty if he turned out or sold machines for paying his own indebtedness without the employers' consent. And the error of the general instructions was not cured by giving instructions at defendant's request submitting to the jury the question of intent. 6. That the statute under which the information was drawn, is taken from Massachusetts, and the cases of *Comm. v. Stearns*, 2 Met., 343, and *Comm. v. Libbey*, 11 id., 64, show that it never was the intention of the legislature to include this class of cases within it.

*The Attorney General*, for the state, contended, 1. That it was not error to refuse to compel the district attorney to elect, before the evidence was in, upon which count he would proceed. Such an election is never required unless the counts are for actually distinct offenses, and may confuse the defendant or the jury. *State v. Gummer*, 22 Wis., 441; *Miller v. The State*, 25 id., 384. Several counts may be necessary to

enable the state to meet possible contingencies in respect to the evidence; an election at the close of the evidence is sufficient to secure the defendant all his rights; and the matter is always in the discretion of the court. Whart. Cr. L., §§ 422 et seq. 2. That the objection on the ground that there was no preliminary examination, was not well taken. (1) The statute is directory in that respect; and § 23, ch. 177, Tay. Stats. (1930), recognizes the right of the district attorney to file an information without a preliminary examination. (2) It does not affirmatively appear that no preliminary examination was had. *Peterson v. The State*, unreported. A statement to that effect in the motion in arrest of judgment is not sufficient. *Griswold v. The State*, 24 Wis., 144. Nor does it appear that defendant was not a fugitive from justice, and thus within the exception of § 22. *Peterson v. The State.* (3) There was in fact a preliminary examination, and the proceedings before the examining magistrate form part of the record. The examination was for the same offense in substance that is charged in the information, and is a compliance with the statute. Ch. 190, Laws of 1875. 3. That there was no error in giving or refusing instructions. The law implies the intent from the act. The giving of the bill of sale was a conversion, fraudulent in its effects; a fraudulent use of the property to the injury of the owners. Good intentions in respect to redeeming or saving the owners harmless, are of no avail. Such a construction would virtually repeal all statutes in relation to embezzlement. *United States v. Taintor*, 11 Blatchf., 374. 4. That ch. 85 of 1873 did not repeal or affect § 30, ch. 165, Tay. Stats. The former refers to a sale of property by the agent on terms not authorized by the owner, and does not refer to a fraudulent conversion or embezzlement.

LYON, J. I. It is claimed that there was no preliminary examination of the defendant for the crime charged in the information, and hence, that the district attorney had no au-

thority to file the information, and that the defendant was illegally tried under it for the offense charged therein. The only ruling of the court which presents this question, is the denial of the motion in arrest of judgment founded in part upon such alleged absence of a preliminary examination.

Before the information was filed, a complaint in writing under oath was made to a justice of the peace against the defendant, charging him with having disposed of two seed-sowers or cultivators contrary to the written or printed instructions of Van Brunt, Barber & Co., his principals and the owners of the machines, by means whereof that firm sustained damage, etc. This complaint evidently charged an offense under ch. 85, Laws of 1873, and was drawn with reference to that statute. A criminal warrant was issued on such complaint by the justice, and the defendant was arrested and brought before the justice, and a preliminary examination was had. The testimony taken on such examination tends to show the defendant guilty of the offense charged in the information. The justice entered a finding and order as follows: "The court finds from the testimony reason to believe the defendant guilty of larceny as defined in the statutes of Wisconsin, and he is held to bail in the sum of $500 for his appearance at the next term of the circuit court for Sauk county." The proceedings before the justice on such examination, with the testimony taken thereon, were returned by the justice to the circuit court, and have been sent to this court with the record of the case.

In the view we have taken of the case, it is not necessary to determine whether a district attorney may lawfully file an information against a person not a fugitive from justice, without a preliminary examination before a committing magistrate. Probably he has no authority to do so, and for the purposes of this case it will be assumed that he has not. See Laws of 1871, ch. 137, sec. 7 (Tay. Stats., 1930, § 22).

Since the adoption, in 1870, of the amendment to sec. 8, art. I of the constitution, by virtue of which amendment in-

formations have, to a great extent, taken the place of indictments, the legislature seems to have full power to prescribe by whom, in what manner, and under what circumstances, an information may be exhibited against any person for any criminal offense. In the case of fugitives from justice, the act of 1871, *supra*, vests the power to file an information without a preliminary examination in the district attorney. In other cases, we assume (as before stated) that under such act there must have been a preliminary examination for a criminal offense before a committing magistrate, and a commitment or holding to bail to answer therefor, before an information could lawfully be filed.

It is not essential, as claimed by the learned counsel for the defendant, that there shall be a formal adjudication by the magistrate that the offense has been committed and that there is probable cause to believe the accused guilty thereof. The statute does not so require. R. S., ch. 176, sec. 19 (Tay. Stats., 1920, § 19). It simply directs the magistrate to hold the accused to bail or commit him, when it shall be made to appear that an offense has been committed and there is probable cause to believe him guilty; and the fact that the magistrate holds to bail or commits is equivalent to such formal adjudication. It was substantially so held in *Rindskopf v. The State*, 34 Wis., 217, in which case certain remarks in the opinion in *The State ex rel. Dilworth v. Braun*, 31 id., 600, relied upon as asserting a different doctrine, are qualified or explained. These were cases under the bastardy act; but so far as the necessity of a formal adjudication is concerned, the doctrine of the Rindskopf case is applicable to this or any other criminal case.

It may further be assumed that, under the act of 1871, the district attorney could only file an information for the offense for which the accused was committed or held to bail, and that if he exhibited an information for another offense, such information would, on a proper proceeding, be adjudged invalid.

But the act of 1871 has been modified in an important particular, and the powers of the district attorney in respect to the filing of informations greatly enlarged, by subsequent legislation.   Ch. 190, Laws of 1875, authorizes the district attorney, after an examination for a criminal offense which results in a commitment of the accused or in holding him to bail, " to file an information setting forth the crime committed according to the facts ascertained on such examination and from the written testimony taken thereon, whether it be the same offense charged in the complaint on which the examination was had or not."

Manifestly, under this statute, if the accused has had a preliminary examination before a committing magistrate, and has been committed or held to bail by such magistrate, the district attorney may exhibit an information against the accused, and bring him to trial, for any criminal offense which the testimony taken on the examination shows that he has committed.   And we think the district attorney is not bound by the opinion or even the adjudication of the magistrate upon the testimony, as to what crime has been committed by the accused.   The complaint (as in the present case) may be for a misdemeanor, and the magistrate may find that the accused is guilty of a misdemeanor only; yet, if the testimony on the examination shows that he is guilty of a felony, the district attorney may lawfully file an information for a felony.   The rule would be the same were the conditions reversed.   If the complaint and finding were for a felony, and the testimony showed that the accused was guilty of a misdemeanor only, the district attorney would be justified in filing an information for the misdemeanor and in refusing to file one for the felony.   In the latter contingency, however, it would probably be the duty of the district attorney to file with the clerk of the court a statement of his reasons for such refusal, as required in the act of 1871, sec. 6.

A remark may here be made concerning the amount of proof

necessary to authorize the district attorney to file an information for an offense other than that charged in the complaint. We think the rule of the statute by which committing magistrates are governed (R. S., ch. 176, sec. 19), should be applied. That is to say, the testimony should show that the offense charged in the information has been committed, and that there is probable cause to believe the accused guilty thereof.

In the present case, the testimony on the examination was taken down very imperfectly; yet we think it shows that the offense charged in the information was committed, and that there is probable cause to believe the defendant guilty thereof. It follows that the information was properly filed.

We might here dismiss the exception under consideration; but there are questions of practice or procedure involved, which ought not to be passed over without remark.

We have thus far considered the case upon the hypotheses that the district attorney cannot lawfully file an information for a criminal offense, except in case of a fugitive from justice, unless the accused has been examined for some criminal offense, and committed or held to bail by the examining magistrate; and that the examination returned with the record in the present case is the only basis for the information.

Whenever the question shall be fairly presented for determination, very probably it will be held that the district attorney cannot lawfully file an information for a criminal offense without a preliminary examination or a waiver thereof, and the holding to bail or commitment of the accused, except in the case of a fugitive from justice. We do not now perceive how any different rule can prevail under the statute. Laws of 1871, ch. 137, sec. 7 (Tay. Stats., 1930, § 22). Assuming the law to be as here indicated, how shall the fact be made to appear that there has been no preliminary examination? In what manner may the defendant proceed to avoid an unauthorized information exhibited against him?

State vs. Leicham.

In the case of *Peterson v. The State* (as yet unreported),* we had occasion to consider these questions to some extent, and our views as to the proper procedure in such cases are indicated in the following extract from the opinion: "If such examination was essential in this case before the information could properly be filed (a point we do not here decide), the fact that there had been such an examination need not be stated in the information or shown affirmatively by the prosecution. The want of an examination is matter in defense or abatement, to be established by the plaintiff in error."

It seems to us that the better practice in such cases is for the defendant to plead the want of an examination in abatement of the information, before pleading to the merits. The district attorney may then take issue on the plea, and the fact can be determined by proofs. The burden of proving his plea is upon the defendant; and his own testimony that he has not had a preliminary examination, or competent proof that, having been examined, he was not committed or held to bail, will be sufficient *prima facie* to prove his plea, and to cast upon the prosecution the burden of showing to the contrary. We do not say that there is no other way in which the want of a preliminary examination may be taken advantage of; we only express the opinion that the practice here indicated is the more regular and orderly, and best accords with the procedure upon indictments at common law and under the former practice.

In this case, the defendant did not prove that he had not been subjected to a preliminary examination and held to bail or committed for the precise offense charged in the information. In the absence of such proof, all essential preliminary proceedings must be presumed; and such presumption is not

---

* The case of *Peterson v. The State* is not yet finally disposed of in this court; a rehearing having been granted therein upon a different question from that to which the case is cited above.                                      REP.

rebutted by the mere fact that the accused had been on some occasion examined for another offense. Hence, if the law of 1875 had never been enacted, we should still be unable to say from this record that the defendant had not had a preliminary examination for the offense charged in the information, and had not been committed or held to bail to answer therefor. *Peterson v. The State, supra.*

We have said more on the exception under consideration than was absolutely necessary to the determination of the questions involved therein, for the reason that the legislation based upon the amendment to the constitution adopted in 1870 has introduced many new features in criminal procedure in this state, and we felt that some discussion of questions which have been argued in this court, but not definitely determined, might be of some service to the bench and bar of the state.

II. The next exception to be considered is to the ruling of the court at the commencement of the trial, refusing to require the district attorney to elect on which count of the information he would proceed.

The court had power to require the district attorney to make such election. But this is a matter resting in the discretion of the court, and a refusal to compel such election cannot in all cases be assigned as error. It is only in cases where such refusal is manifestly an improper exercise of discretion, that the ruling can be reviewed in the appellate or supervisory court. It is said in *State v. Gummer*, 22 Wis., 441, that "the court will only listen to the request to compel the prosecution to elect in felonies, when they can see that the charges are actually distinct, and may confound the prisoner or distract the attention of the jury." To the same effect is the case of *Miller v. The State*, 25 id., 384. The rule of these cases is abundantly sustained by the authorities.

We are quite unable to perceive how the refusal by the court to compel the district attorney to elect could possibly

confound the defendant in his defense or distract the attention of the jury. The testimony was all directed to the point that the defendant had fraudulently converted to his own use the machines mentioned in the first count of the information, and all of it would have been admissible had the information contained no other count. Both counts were evidently predicated upon the same fraudulent acts of the defendant, to wit, the conversion of certain property of the prosecutors, or of the proceeds of such property. It might have been uncertain whether the actual conversion was of the property or proceeds, and it was entirely competent for the district attorney to insert in the information a count for each, to meet the possible contingencies of the proofs. *Miller v. The State, supra.* It seems to us impossible that the defendant could have been prejudiced by the refusal of the court to compel an election. Hence the exception is not well taken.

III. Several exceptions were taken to the charge given to the jury by the learned circuit judge, and to his refusal to give certain instructions proposed on behalf of the defendant. It is essential to a correct understanding of these exceptions, that a brief statement be made of the evidence given and the facts proved on the trial.

In January, 1875, a contract in writing was entered into by and between the firm of Van Brunt, Barber & Co., of the one part, and the defendant of the other part, by which the firm appointed the defendant its agent to sell its seeders on the terms and conditions and under the restrictions therein specified. The defendant also thereby accepted such agency, and bound himself to fulfill, observe and keep such terms, restrictions and conditions. This contract, in all essential particulars, is like the contract considered in *The Williams Mower & Reaper Co. v. Raynor*, 38 Wis., 119, where it was held that the party receiving the property under it was merely the agent or bailee of the other party to sell it, the title remaining

in such other party, and the agent was held liable in tort for a conversion of the property. (See pp. 123–9.)

A large number of seeders were shipped by Van Brunt, Barber & Co. to the defendant pursuant to the contract, some of which were sold by the defendant and accounted for, and others were returned to the firm. One Myers had become surety for defendant on a note which had been sued and prosecuted to judgment and execution against both, and the property of Myers had been seized on the execution. The defendant, being pressed to pay this debt, after some hesitation, sold to Myers three of the seeders received by him under the contract with Van Brunt, Barber & Co., for the purpose of getting money from Myers with which to pay such execution. Myers thereupon paid him $130 in cash, under an agreement by the defendant to pay the judgment against them with the money, which agreement the defendant at once performed. The defendant stipulated with Myers that he might purchase back the seeders by repaying the $130, and tried to stipulate (but without success) that Myers should not remove the seeders. Myers took and held possession of the seeders. These transactions were without the consent or knowledge of Van Brunt, Barber & Co., and the defendant has never accounted to them for the seeders sold to Myers. These are the seeders described in the information.

The foregoing facts are proved by the uncontroverted evidence, and are absolute verities in the case. That they show a fraudulent conversion by the defendant to his own use of the property described in the information, cannot be doubted. And it is equally clear that such property came to the possession of the defendant, and was under his care, by virtue of his employment as agent of the owners for the sale thereof. Moreover, there is no room in the case for the theory that the defendant supposed he had the right, under his contract with the owners, to convert the property to his own use,

and he cannot urge in justification of his conduct that he construed the contract as giving him the right, and hence, converted the property in good faith. He knew that he held the property as agent for the owners by virtue of his employment as such, and he converted it to his own use without the consent of the owners, and, as he well knew, in violation of his duty. There is nothing in the evidence that tends to show that he acted innocently; nothing which enables us to say that perhaps he did not understand the nature of his acts, and may not have intended to commit a crime. We are compelled to believe that he converted the property to his own use with full knowledge of the quality of the act and the possible consequences.

Neither does the fact (if it be a fact) that the defendant believed, when he converted the seeders to his own use, that he would be able to pay the owners for them when required to account for them, and intended to do so, remove from the act of conversion its fraudulent and criminal character. The fraud and crime inhere in the act, and were not eliminated therefrom by any mere mental process, however amiable or virtuous it may have been.

The instructions given and refused must, of course, be considered in the light of the evidence and of the undisputed facts in the case; and thus considered, we fail to find any error in that behalf of which the defendant can justly complain. Indeed, we think the jury were, in some particulars, instructed more favorably to him than the facts of the case warranted.

The proposed instructions refused, and the instructions given, upon which the exceptions are predicated, are as follows:

The court refused to charge, "If you find that the defendant so construed the written contract that he honestly supposed that he had the right to sell the machines and use the proceeds thereof and afterwards account to the company, and that

in the transaction in question he acted under that impression and in good faith, you should not find him guilty.

" If you find from the evidence that at the time of making the bill of sale the defendant intended and expected to be able to pay for the same to the company, when his general settlement should be made, and that he acted in good faith and with no criminal intent, you should not find him guilty."

The following instructions were given:

" It is not enough to constitute the offense charged, that the defendant was the agent of the company, and that he converted the property to his own use; but the evidence must show that the property was fraudulently converted to his own use, or converted with the intent to embezzle.

" If you entertain any reasonable doubt as to whether the defendant intended to defraud the company, he is entitled to the benefit of the doubt.

" Under the written contract, which has been read in evidence, and which it is the duty of the judge to construe, the defendant was, at the time of the alleged embezzlement, the agent of Van Brunt, Barber & Co. for the sale of the machines mentioned in the contract, and for receiving and passing over the consideration, whether in notes or money, to the said company.

" If at that time, or before it, he had received machines under the contract and held them for sale, he was bound by his contract to sell them according to the terms of such contract for money or notes which were to be the property of said company.

" It is for you to find whether or not he had received and had on hand, at the time of the alleged embezzlement, the machines in question. If you find he had, and should find that he sold any of them for the purpose of paying an indebtedness of his own, or pledged or turned them out as security for the purpose of raising money to pay his own indebtedness, without the consent of his principals, it was an unauthorized

and fraudulent use of them, or an embezzlement and fraudulent conversion of such as were so used to his own use. And if you find that he did so while the property was in his possession, he is guilty as charged in the first count of the information.

"It would not relieve him from guilt if he intended and expected, at the time of doing so, to pay his principal for them with other money or property, or to repurchase or redeem them of the party to whom they were sold or mortgaged, or to repay the money to the party to whom they were turned out or pledged as security."

It is apparent from an examination of these instructions, that the rulings of the court, considered with reference to the facts in the case, are in harmony with the views above expressed, and that the exceptions to such rulings cannot be sustained.

IV. The court refused the following instruction: "The evidence shows that the defendant was not such an agent of the company as is intended by the statute under which this charge is made. I therefore charge you that there is no evidence sufficient to convict the defendant."

The instruction was evidently drawn with reference to the decisions of the supreme court of Massachusetts in *Commonwealth v. Stearns*, 2 Met., 343, and in *Comm. v. Libbey*, 11 id., 64, upon a statute like ours. In the first of these cases it was held, that "an auctioneer who receives money on the sale of his employer's goods, and does not pay it over, but misapplies it, is not such an agent or servant as is intended by the statute." The ground of this decision is, that the money so received is the money of the auctioneer, and not of the employer; and the court lay stress upon the fact that the auctioneer was not charged with any misappropriation or unlawful conversion of the specific property entrusted to him. In *Comm. v. Libbey*, the indictment was against a person employed to collect bills for the

proprietors of a newspaper, charging that the accused embezzled and fraudulently converted to his own use the moneys collected by him for such proprietors by virtue of his employment. The court drew a distinction between a special agency, where the right of property and the possession remain in the principals, and the cases of commission merchants, auctioneers and attorneys authorized to collect demands for others; holding that an indictment would lie for a fraudulent conversion of the property in the former case, but not in the latter cases for a fraudulent conversion of the moneys collected.

In the present case the agency was special, and, as above stated, the right of property continued in the principals. Hence, within the rule of the Massachusetts cases, a fraudulent conversion of the property by the agent is a criminal offense under the statute. We think the proposed instruction was properly refused.

V. It was argued at the bar by the learned counsel for the defendant, that the law of 1873, ch. 85, supersedes, in a case like this, the statute under which the information was drawn (R. S., ch. 165, sec. 27), and reduces the offense charged from felony to a mere misdemeanor, and hence, that the greatest punishment that can be inflicted is that prescribed in the act of 1873.

It is manifest that the exceptions do not and cannot raise this question, for the circuit court will give judgment as the law requires, whether it be for the less or the greater penalty, and we can only determine the question when called upon to review the judgment.

It is believed that the foregoing observations dispose of all the exceptions; and it results therefrom that the exceptions must be overruled, and the cause remanded for further proceedings according to law.

*By the Court.* — So ordered.