Campbell vs. The State.

CAMPBELL, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 25 — June 20, 1901.*

*Criminal law and practice: Second preliminary examination: Homicide: Court and jury: Evidence: Articles arousing prejudice: Prior statements of deceased: Excusable homicide: "Dangerous weapon."*

1. Under sec. 4656, Stats. 1898 (giving the district attorney authority to hold a second preliminary examination of a person discharged on the first examination, if he "shall afterwards discover admissible evidence sufficient, in his judgment, to convict the person discharged"), when the district attorney, acting in good faith, has decided that the evidence discovered is sufficient for the purpose indicated, his conclusion is not open to review upon an objection, at the trial, to the legality of the second examination; nor is it jurisdictional that he should recite in the proceedings that he has discovered additional evidence.

2. Although on the first examination the magistrate has found that "there is not good reason to believe the offense stated in the complaint has been committed," such finding is not a final or conclusive adjudication and is no bar to a second examination under sec. 4656, Stats. 1898.

3. On a trial for murder it appeared that the deceased, whose death resulted from a fracture of the skull, had been struck on the right side of the head by a cane in the hands of one person and had also been struck by a chair in the hands of the accused. There was but one wound on the head, and that on the right side. The accused claimed that his blow did not reach the head. Medical experts testified that the cane, though light, might have caused the fracture. *Held*, that it was error to instruct the jury that there was and could be no evidence to warrant a conclusion that there was or was not a fracture resulting from the blow of the cane.

Campbell vs. The State.

4. Articles likely to excite sympathy or arouse prejudice should not be admitted in evidence before a jury, unless the ends of justice demand it. In this case the admission of the hat of the deceased and of the chair with which the accused struck him is *held* not erroneous, and the admission of a portion of the skull, brain, etc., of the deceased, though of more doubtful propriety, is *held* not without warrant.

5. While the accused and an associate, as floor-managers at a dance, were attempting to quiet a disturbance, deceased came up and struck the accused a violent blow in the face and was then immediately struck with a cane by the associate and with a chair by the accused, one of the blows causing his death. On the trial of the accused for murder it is *held* that it was proper to exclude evidence, offered on his behalf, that deceased had said, in a saloon, "that if a row was expected and if they had any trouble, he wanted to be notified so he could take part in it,"— the accused having been in no way connected with such conversation and having had no knowledge of it prior to the affray.

6. In such case the accused was entitled to have the question of excusable homicide (under sec. 4367, Stats. 1898) submitted to the jury, the facts indicating that there was no intent to kill, that the combat was sudden, the provocation great and such that the jury might have believed it sufficient, the killing not done in a cruel or unusual manner, and the chair not necessarily a dangerous weapon.

7. In many cases the court may decide that a particular weapon was or was not a dangerous weapon, and when practicable it is the court's duty to do so. But when the weapon (in this case a chair) might be dangerous or not, according to the manner in which it was used or the part of the body struck, and the evidence on these points is in dispute, the question must be left to the jury.

ERROR to review a judgment of the circuit court for La Fayette county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

Plaintiff in error was informed against for murder, with one Daniel Collins. A separate trial was granted. Before pleading to the information, he entered a so-called "plea in abatement," based upon the following facts:

On December 20, 1896, one Joseph H. Clary, as justice of the peace, held an inquest over the body of Edward W. Hale, the deceased, and as a result the jury returned a verdict finding that Hale came to his death by blows inflicted either

by Collins or plaintiff in error. The justice issued his warrant for the arrest of the latter on the charge of murder, and conducted an examination. At the close thereof he made the following finding: "This court finds and adjudges that there is not good reason to believe the offense stated in the complaint here has been committed, and that there is no probable cause to believe said defendant guilty of said offense, and thereupon the said defendant is discharged, and the costs herein taxed to said county." Thereafter, and on February 26, 1897, a court commissioner, upon a complaint charging the plaintiff in error with having committed the same offense, issued his warrant, he was again arrested, and a second preliminary examination was held.

The plea sets up that the court commissioner had no right to hold such examination because of the adjudication of the justice aforesaid, and because the district attorney did not thereafter discover admissible evidence sufficient, in his judgment, to convict the accused, and that the district attorney who conducted the last examination was not the same person who conducted the former one. The claim was that the finding of the justice that no offense had been committed was *res adjudicata* and a bar to any and every subsequent arrest or examination for the offense charged in the information.

To this plea the district attorney made answer, setting up the first examination; the discharge of the accused; the discovery of new evidence; the issuing of a second warrant and arrest thereunder; the proceedings upon the examination; the fact that nine witnesses were sworn who had not given testimony on the first examination; the finding that a homicide had been committed under circumstances which constituted manslaughter in the fourth degree, and as to the probable guilt of the accused; and the holding to bail.

Both sides asked that the issue be tried by the jury, but the court ruled that the question at issue was one of law,

and proceeded to take proof of the facts alleged. The district attorney testified that new evidence had been discovered and several witnesses sworn who had not given testimony on the former examination, and spoke of such evidence in detail. The court finally overruled the plea. The accused entered a plea of not guilty, and the trial then proceeded.

The facts out of which the homicide arose may be briefly stated as follows: The accused attended a dance at Collins's Hall, in the village of Gratiot, and was one of the floor managers. Daniel Collins, his codefendant, was the other. The deceased, his brother, and one William Pinney, among others, were in attendance, and became somewhat intoxicated. About midnight, deceased's brother, Lewis Hale, got into an altercation with one William Buche. Both floor managers started towards the place to quell the disturbance. The evidence as to what occurred is somewhat in dispute. While the floor managers were attempting to preserve order, the deceased came up, and was hit on the right side of his head by Collins, with a cane weighing about thirteen ounces. This was followed by a blow from a chair in the hands of the accused. The chair weighed ten pounds and ten ounces. Only one wound was found on the head of the deceased. This was on the right side, and was of such a character as to cause death. The skull was badly fractured. The chief controversy was as to whether the blow with the cane or the chair caused death. The evidence of accused showed that he had just warned Lewis Hale that they did not want any disturbance, when the deceased came up and struck him a powerful blow in the face, bruising and injuring one of his eyes. He saw Pinney rushing for him, and he immediately grabbed a chair, and made a pass at the deceased, which he warded off with his left hand. The forefinger of the left hand of deceased was found to have been broken. He claimed that he raised the chair

because he thought deceased was coming for him again. It all occurred in a very short space of time, and the witnesses do not agree as to all the circumstances of the affray. Deceased was of muscular build, six feet tall, and weighing about 170 pounds.

It seems to have been conceded that the accused had no intention of killing deceased, and that as floor manager it was a part of his duty to preserve order. The defense was that the homicide was either justifiable or excusable. The court declined to submit the question of excusable homicide to the jury, but gave instructions as to justifiable homicide. The verdict was manslaughter in the third degree, and the sentence was two years in state prison. A motion for a new trial, on the ground of errors in the rejection and reception of evidence, errors in giving and refusing instructions, and for newly discovered evidence, was denied. A stay of proceedings was granted pending the prosecution of the writ of error by the accused.

For the plaintiff in error there was a brief by *Wilson & Martin* and *Spensley & McIlhon*, and oral argument by *R. J. Wilson* and *Calvert Spensley*. To the point that the adjudication of the justice on the first preliminary examination was in form and effect an adjudication that no offense had been committed, and as between the state and the plaintiff in error this adjudication was final and conclusive, they cited *State ex rel. Dilworth v. Braun*, 31 Wis. 600; *State v. Leicham*, 41 Wis. 573; *State v. Rindskopf*, 34 Wis. 217.

For the defendant in error there was a brief by the *Attorney General*, and oral argument by *C. E. Buell*, first assistant attorney general. They contended, *inter alia*, that such an assault as was made in the case at bar is an assault with a dangerous weapon. *U. S. v. Small*, 2 Curtis, C. C. 241; *State v. Rigg*, 10 Nev. 284; *Blige v. State*, 51 Am. Rep. 628; *Miller v. State*, 106 Wis. 156, 164.

BARDEEN, J.   The errors relied on for the reversal of this judgment may be grouped under the following heads: (1) overruling the plea in abatement; (2) improper remarks of the court; (3) improper rejection and reception of evidence; (4) failure to instruct the jury as requested, and the giving of improper instructions; (5) errors occurring after verdict.

1.  Under this head the plaintiff in error first insists that his plea in abatement ought to have been submitted to a jury for trial.  As said by this court in *Jackson v. State*, 91 Wis. 253, 265: "Whenever an answer to a plea in abatement raises an issue. of fact which may be controverted by evidence *dehors* the record, then such issue is triable by jury. But whenever, as here, such issue is purely one of law, which has already been conclusively determined, then it is necessarily to be decided by the court."  The answer of the district attorney raised no issue of fact on the plea, unless it can be said to have arisen by the allegation in the plea and the answer thereto that the second examination had been instituted by the district attorney without his having discovered "admissible evidence sufficient, in his judgment," to convict the accused, under sec. 4656, Stats. 1898.   The claim on the argument was that the defendant had a right to have the jury determine whether the evidence said to have been discovered by the district attorney, so as to warrant a second examination, was sufficient for that purpose.

The section above cited gives the district attorney authority, when "the person complained of has been discharged for want of sufficient evidence to raise a probability of his guilt," to hold a second preliminary examination, if he "shall afterwards discover admissible evidence sufficient, in his judgment, to convict the person discharged."   In this case the district attorney testified that such evidence had been discovered, and, in effect, that his judgment had been satisfied.   When that appeared there was no issue of fact that

Campbell vs. The State.

could be raised, under any proper construction of the statute. When, acting in good faith, he decided that the evidence discovered was sufficient for the purpose indicated, that closed the matter to all future inquiry. To say that his conclusion is open to trial by jury is to substitute the judgment of others for that of the officer designated by law and who was charged with a legal duty to make the determination. The law deals tenderly with the rights of accused persons, but we cannot believe that it was the legislative intent that the judgment of the prosecuting officer should thus be open to review, or that public policy demands that any such construction should be given to the statute.

A further contention in this connection is that the determination of the justice on the first examination, " that there is not good reason to believe the offense stated in the complaint herein has been committed," was an adjudication final and conclusive as between the parties, and a bar to any further prosecution. No authority in point was cited to sustain this proposition, and we do not think one can be found in the books. The argument seems to be based upon a misapprehension of the purpose of a preliminary examination. It is not a trial in the sense that the accused has been put in jeopardy. Unless prevented by statute, there may be as many successive examinations as the proper officials may choose to entertain. It takes the place of the former mode of investigation by a grand jury. It is but an inquiry into the facts to ascertain whether an offense has been committed and whether there is probable cause for charging the accused with the offense. The finding of the magistrate is not the ultimate determination of this matter as upon a trial. It is an investigation in the interest of public justice, with a view of ascertaining responsibility for crime and developing the particulars thereof. The law does not require the magistrate to make any formal adjudication either that an offense has been committed or that there is probable

Campbell vs. The State.

cause to believe the accused guilty thereof. It simply requires him to hold the party to bail or commit him if those facts appear, and to discharge him if they do not. *State v. Leicham*, 41 Wis. 565–573. The district attorney is not bound by the finding of the magistrate. Sec. 4656 authorizes him to proceed again under the circumstances hereinbefore noted, and, if the accused has been held to bail or committed for trial, he may file an information for any offense which the facts disclosed on the examination warrant. Sec. 4653; *State v. Leicham, supra; Porath v. State*, 90 Wis. 527. Here the district attorney saw fit to institute a second examination. It was in no sense jurisdictional that he should have recited in the proceedings that he had discovered additional evidence, nor was it any bar to his action that the former magistrate had concluded "that the offense stated in the complaint" had not been committed.

2. One of the most important questions on the trial, from the standpoint of plaintiff in error, was whether the blow which caused the death of Hale had been inflicted by the cane in the hands of Collins or by the chair used by him. Upon being called upon to make a ruling as to testimony offered, the trial court made use of the following language: "I think the question for the jury in this case, if they are convinced beyond a reasonable doubt that a blow inflicted in the hall that night caused death, is to determine which blow." This was followed by further argument by counsel, when the court said: "There is no proof in this case, and evidently there can be none, that would warrant the jury in coming to a conclusion that there was or was not a fracture resulting from the blow of the cane. So that really they are asked to go outside of the realms of proof in the hypothetical question, so far as that particular is concerned." The testimony showed that two blows had been struck,— the first by a cane in the hands of Collins, upon the right side of the head, which caused the deceased to stagger; the sec-

ond was by a chair in the hands of the accused.     There was but one wound on the head of deceased, and that on the right side.     The accused claimed that his blow did not reach the head.     Very many of the witnesses testify as to the blow with the cane.     It is true the cane was light, weighing only thirteen ounces, yet the doctors say it was possible that the fracture found might have been caused thereby.     For the court to make use of the language quoted in the presence of the jury, and to leave it unqualified and as expressing his opinion of the facts in the case, was certainly erroneous and prejudicial.

3. We have examined with care the various objections to evidence and the ruling of the court thereon, none of which appears to have been of sufficient gravity to warrant extended discussion.     The admission of the hat of the deceased in evidence and of the chair used by the accused was not erroneous or harmful.     We have more doubt as to the introduction of the portion of the skull, brain, and blood clot.     They were certainly admissible, if deemed necessary to a thorough understanding of the force of the blow and the cause of death.     Usually the medical testimony is sufficiently definite to cover all demands in this regard.     The practice is to keep from the jury all those matters likely to excite sympathy or arouse prejudice, and it is only when the ends of justice demand it that the practice suggested should be overstepped.     We cannot say that it was violated without warrant in this instance.

The court rejected the testimony of a witness who had heard deceased say, in a saloon, " that if a row was expected, and if they had any trouble, he wanted to be notified, so he could take part in it."     The accused was in no way connected with the conversation, nor was its tenor made known to him before the affray occurred.     It certainly could have had no effect on his conduct if he was ignorant of it.     As between the accused and the deceased, there was no ques-

tion as to who began the difficulty. There was no real dispute in the testimony, or denial by the state that deceased first struck the accused a violent blow in the face. Such being the fact, we do not see how the admission of this conversation could have aided the case made. Sometimes statements and threats made by the deceased are admitted to show intent and his attitude towards the accused, as is noted in 3 Rice, Ev. § 363, but we do not think the facts disclosed in this case bring it within the lines of the decisions there noted.

4. Counsel for the accused requested the court to instruct the jury both as to justifiable and excusable homicide. The court submitted the most of the instructions requested as to justifiable homicide, but declined those requested as to its being excusable. It is insisted that there is ample evidence in the case to sustain the instructions requested. Sec. 4367, Stats. 1898, provides:

"Such homicide is excusable when committed by accident and misfortune in lawfully correcting a child or servant, or in doing any other lawful act by lawful means with usual and ordinary caution and without unlawful intent; or by accident and misfortune in the heat of passion upon any sudden and sufficient provocation, or upon a sudden combat, without any undue advantage being taken and without any dangerous weapon being used, and not done in a cruel or unusual manner."

The instruction requested covered the last two clauses of the section. The statute was intended to cover at least three or more distinct and separate situations. The homicide is excusable if committed under the circumstances stated while lawfully correcting a child or servant. It was also excusable if committed by accident or misfortune, in the heat of passion, upon any sudden and sufficient provocation; also upon a sudden combat, if no dangerous weapon was used and no undue advantage was taken. The several classes of cases are stated in a disjunctive form, and, under

ordinary rules of construction, each constitutes a class by itself, and if the facts bring the case within any one of them the killing was excusable.   The facts already referred to indicate the lack of intent to kill on the part of accused. They show that the combat was sudden and unprovoked. Without warning, the deceased struck the accused a powerful blow in the eye, which staggered him and turned him to the left.   Rapidly and instantly he picked up the chair and struck.   If it be assumed that the chair struck the head of deceased and caused death, it cannot be said that such killing was done in a cruel and unusual manner.   The provocation was great, and if the jury believed it was sufficient every demand of the statute has been met, unless it can be said the chair used under the circumstances in proof was a dangerous weapon.

In *Rowan v. State*, 30 Wis. 129, the instrument used was a chair, and, as in this case, only one blow was struck, and that upon the head of deceased.   This court said: "The thing used was not necessarily a dangerous weapon, and the blow struck was not necessarily of a dangerous tendency." Ordinarily, what is a dangerous weapon is a question of law for the court (*Miller v. State*, 106 Wis. 156–167); yet the circumstances may be such, and the weapon used of such a kind, as to involve a question of fact for the jury.   In *Kouns v. State*, 3 Tex. App. 13, it is said: "A chair is not necessarily a deadly weapon.   Whether it is such must depend upon its size or weight, in connection with the manner of its use and the part of the person that is stricken by it."   In *Sylvester v. State*, 72 Ala. 201, the court says: "A deadly weapon is one, not, as asserted in the instruction, a blow from which would *ordinarily* produce death, but one from which, as it was used, death would probably result; and an instrument or weapon used in inflicting injuries upon the person of another may or may not be esteemed deadly, according to the manner of its use and the subject on which it is used."

Campbell vs. The State.

In discussing the same question, the court of North Carolina says that an instrument may be deadly or not, according to the mode of using it or the subject upon which it is used, and, generally speaking, the decision of the question is for the court.  *State v. West*, 6 Jones, Law, 505.  In a Missouri case the trial court refused to instruct the jury that "neither a pocketknife nor a brickbat is a deadly weapon, within the meaning of the law."  The supreme court disposed of the question by saying:  "Whether either was a deadly weapon was properly referred to the jury as a question of fact."

A review of the authorities leads us to this conclusion: In many cases the court may decide that a particular weapon was or was not a dangerous weapon, and when practicable it is the court's duty to do so.  But when the weapon might be dangerous or not, according to the manner in which it was used or the part of the body struck, the question must be left to the jury.  *U. S. v. Small*, 2 Curtis, 241; *State v. Dineen*, 10 Minn. 407; *Blige v. State*, 20 Fla. 742; *Dœring v. State*, 49 Ind. 56.  In case the evidence is in dispute as to the manner of its use or as to the part of the body stricken, the question of fact must be determined before it can be said as a matter of law that it was or was not a dangerous weapon. Following the *Rowan Case*, we say that the chair was not necessarily a dangerous weapon.  If the manner of its use had been perfectly clear and without dispute, the court might have decided whether it was or was not such, as a matter of law, in this case.  But the evidence and inferences therefrom are not without dispute.  In relation to the question of excusable homicide, we think the evidence was such that the court should have submitted that phase of the case to the jury, leaving them to say whether, under all the facts and circumstances, the chair as used was a dangerous weapon. The court submitted that question to the jury when charging in relation to manslaughter in the third degree, and we think properly.  The error arose from failing to submit the

Campbell vs. The State.

question of excusable homicide.    He should have also told the jury what constituted excusable homicide, when considering the question of guilt under that degree of manslaughter.

5. The errors already discussed, being of sufficient gravity to work a reversal of the judgment, render it unnecessary to discuss the motion for a new trial on the ground of newly discovered evidence, or because of the alleged misconduct of one of the jurors.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.