THE STATE v. JAMES COFF, Appellant.

Division Two, February 15, 1916.

1. INSTRUCTIONS: No Assignment in Motion. Whether or not it was error to give an instruction on murder in the second degree, or to fail to give an instruction on involuntary manslaughter in the fourth degree, or to give an instruction concerning the bad feeling existing between defendant's and de-

cedent's families, or to give an instruction on manslaughter in the fourth degree, will not be reviewed on appeal, where none of these matters was assigned as error in the motion for a new trial.

2. **ACCIDENTAL HOMICIDE: Instruction Required.** Where the evidence for defendant tended to show that his participation in the combat was merely that of a person defending himself, and that he was, therefore, engaged in a lawful art; that while in the act of defending himself, the deceased grabbed him by the throat, and in order to protect himself he shoved deceased away, causing him to stagger and fall; and that in the fall deceased's head struck the curb-stone and received the fatal wound, the statute (Sec. 4452, R. S. 1909) declaring that homicide shall be excusable when committed "upon sudden combat, without any undue advantage being taken and without any dangerous weapon being used, and not done in a cruel and unusual manner" required the court to give an instruction on accidental homicide; and a failure to do so, where the point was properly raised at the trial and preserved for review, was reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

REVERSED AND REMANDED.

*Thomas J. Rowe, Jr.,* and *Henry Rowe* for appellant.

(1) The court erred in failing to instruct the jury on the theory that deceased may have gone to his death by accident or misfortune, and on the evidence in the case defendant was entitled to such instruction. State v. Reed, 154 Mo. 122; French v. Commonwealth, 88 S. W. 1070; Sec. 4452, R. S. 1909; State v. Cook, 3 L. R. A. (N. S.) 1152. (2) The court erred in failing to instruct the jury on the law applicable to the evidence of the combat between defendant and William Conway, son of deceased, and the subsequent participation of deceased therein.

*John T. Barker,* Attorney-General, and *Lewis H. Cook* for the State.

(1) It is well established that the defendant is required to call the court's attention particularly in the motion for a new trial to the question upon which it failed to instruct the jury, in order to entitle him to a new trial upon such ground. That was not done in this case. No instruction was asked on this proposition. Neither was the attention of the court called specifically in the motion for a new trial to its failure to so instruct. This court has recently ruled that a general specification in the motion is insufficient, in that it fails to call the attention of that court to the particular point omitted in the instructions. State v. Conway, 241 Mo. 271; State v. Walls, 262 Mo. 113; State v. Douglas, 258 Mo. 281; State v. Sydnor, 253 Mo. 380; State v. Wellman, 253 Mo. 316; State v. Sykes, 248 Mo. 712; State v. Horton, 247 Mo. 663; State v. Chissell, 245 Mo. 555; State v. Connors, 245 Mo. 482; State v. Bostwick, 245 Mo. 483; State v. Harris, 245 Mo. 450; State v. Perrigan, 258 Mo. 237; State v. Dockery, 243 Mo. 592. (2) It is conceded that defendant is entitled to clear and explicit instructions as to excusable and justifiable homicide, where there is any evidence in the case to support the theory, but where it plainly appears that in no view of the case is the law of excusable or justifiable homicide applicable, a refusal or omission to give instructions on those points is not error. In the case at bar every witness, including the defendant, testified that defendant struck deceased one or more blows under circumstances that would preclude any instructions on justifiable homicide.

WILLIAMS, C.—Under an indictment charging him with murder in the second degree, defendant was tried in the circuit court of the city of St. Louis, found

guilty of manslaughter in the fourth degree, and his punishment assessed at two years in the penitentiary. Defendant duly perfected an appeal.

There was evidence tending to establish the following facts:

At the time of the tragedy, it appears that defendant, a blacksmith, twenty-eight years of age, resided with his parents at No. 3909 Kennerly Avenue, in St. Louis, Missouri. W. A. Conway, together with his wife and fourteen-year-old sister, were tenants of the second story of the house next door to the east, being No. 3907 Kennerly Avenue; the lower portion of that house being occupied by a family by the name of Hazlit.

About a week before this tragedy, Benjamin F. Conway, the father of W. A. Conway, came from his home in Kentucky to make his son a visit. Benjamin F. Conway is the deceased.

The Conway family had been living in this house about four and one-half months and it appears that, during that time, considerable ill feeling had grown up between the women of the two households, the nature of which is not disclosed. About two months prior to the tragedy, the Coffs had caused to be erected at the rear of their premises, and on the side next to the house occupied by the Conways, a high brick wall so as to prevent persons in the Conway house from seeing persons to the rear of the Coff house. A sheet-iron shutter or shield was also erected on the Coff premises, immediately in front of one of the windows in the Conway house.

The killing occurred on September 4, 1914. The owner of the Conway house had employed a painter to paint the same. The space between the two houses was about two and one-half feet. The day before the tragedy, the painter had placed the bottom of his ladder over on the Coff premises and, in doing so, had

slightly injured a hedge belonging to the Coffs. Mrs. Coff called a policeman and had the painter remove the ladder.

The next day, about 11 a. m., W. A. Conway and the owner of the house in which he lived were out in the front yard looking at the painting. The painter was painting on the front porch, but was not using a ladder. Mrs. Coff was sitting on her front porch. She exhibited a revolver and stated to W. A. Conway that if they came over on her premises, they would be killed. W. A. Conway replied that he would have her arrested. A policeman was called and after a short conversation, W. A. Conway and his wife and the owner of the building proceeded down to the Municipal Courts Building for the purpose of having a warrant issued. It appears that the defendant returned to his home just about the time that the Conways started down town and while the Conways were waiting for a street car they saw the defendant coming toward them and they moved down the street two or three blocks to catch a car.

That same evening, about six o'clock, W. A. Conway and his wife started out for a little walk. In a few minutes, Benjamin F. Conway (the deceased) and his fourteen-year-old daughter started down the street to mail a letter. They overtook W. A. Conway and his wife, who had stopped to observe a show window, and asked them to wait while they went down the street and mailed a letter. The deceased and his daughter proceeded about a half block, and, at this time, the defendant, on his way home from work, passed W. A. Conway and his wife on the street. (In order that the testimony may be better understood, we will refer to W. A. Conway as Conway, Jr., and Benjamin F. Conway, the deceased, as Conway, Sr.). Defendant as he approached Conway, Jr., said, "You G—.d— s— of a b—, I am going to kill you for insulting my mother." Conway, Jr., started to say, "I

didn't insult your mother," but before he could say it, defendant knocked him down. Conway, Jr., then got up and defendant again knocked him down and was on top of Conway, beating him, when Conway's wife called for Conway, Sr., who was then about a haif-block away. Conway, Sr., ran over to the scene of the fight, carrying the letter in his hand, and threw something which appeared to some of the witnesses to be a paper and called out to the two men to stop. Defendant then turned upon Conway, Sr., and struck him a blow which felled him to his knees. Conway, Sr., arose and defendant struck him another blow which knocked him down and as he fell his head struck the curb-stone. Defendant then kicked Conway, Sr., several times, and he rolled into the gutter unconscious. He never regained consciousness and died the following day at a hospital.

The evidence upon the part of the State tends to show that neither Conway, Jr., nor Conway, Sr., struck at the defendant. Conway, Jr.'s, testimony was corroborated by the following eye-witnesses to the fight, to-wit: Alex Campbell, Catherine M. Conway, Frank D. Williams and Elizabeth Conway.

The deputy physician to the coroner testified that he made an examination of the body of the deceased and described the deceased as being a white male, about fifty years of age. He found a fracture of the skull, about three inches long, on the left side of the head, extending down into the base of the skull.

The evidence upon the part of the defense tends to establish the following facts:

Defendant, testifying in his own behalf, said that he was going home from work about six o'clock and that Conway, Jr., stopped him at the corner of Maffitt Street and accused him of using vulgar language in the presence of Mrs. Conway. Defendant attempted to reply by telling Conway that he had insulted defendant's mother, but, before he could do so,

Conway, Jr., struck him a blow in the mouth. Defendant then struck Conway, Jr., and knocked him down. Mrs. Conway then grappled with the defendant and. defendant heard someone say, "Look out." Defendant then broke Mrs. Conway's hold and turned just in time to see Conway, Sr., rush up with. an old broom with which he tried to strike defendant, but the broom slipped from Conway, Sr.'s, hand and missed the defendant. Conway, Sr., then grabbed defendant by the throat, but defendant shoved Conway, Sr., and he staggered out into the gutter and fell.

On cross-examination of the defendant, the following occurred:

"Q. Then you knocked him (Conway, Sr.) down? A. No, sir, not until he choked me."

Later in his cross-examination, the following questions and answers were given:

"Q. Did the old man get hold of your throat? A. Yes, sir, both hands around my throat.

"Q. And then you pushed him off, at that time, is that so, pushed him off and struck him? A. No, sir, I didn't strike him; I just pushed him away from me and he staggered and fell.

"Q. You pushed him away and he staggered and fell. You didn't hit him at all then? A. Why you can call it hitting if you want; I just stuck my arm. out.

"Q. You just pushed him off and he staggered and fell, is that your story? A. Yes, sir, that is my story.

"Q. Then your story to the jury is you didn't hit the old man at all, but you pushed him off as he grabbed your throat, and you pushed him off and he fell? A. Yes, sir, I pushed him off and he fell.

"Q, Then you didn't hit him in the face or anywhere else? A. No, I pushed him; maybe that. marked his face."

Defendant testified that after the fight his lip was swollen and his neck was scratched in many places and his shirt was torn to shreds.

Albert Smith testified for the defendant that Conway, Sr., threw a broom at the defendant and then caught the defendant by the throat and that defendant broke loose and hit the deceased, causing him to fall to the sidewalk and roll into the gutter. Four other witnesses corroborate the testimony of witness Smith, some of them saying that deceased's head struck the curb as he fell.

Several witnesses testified that the general reputation of defendant for peace and quietude, prior to this controversy, was good.

I. Appellant contends that the court erred (1) in giving an instruction on murder in the second degree, (2) in failing to give an instruction on involuntary manslaughter in the fourth degree,
Instructions. (3) in giving the instruction concerning the bad feeling existing between the two families, and (4) in giving the instruction on manslaughter in the fourth degree.

Concerning each and every one of the above points, it is sufficient to say that these matters were not assigned as errors in the motion for a new trial, and we are, therefore, precluded from a review of the same.

II. It is further contended that the court erred in failing to instruct the jury on the theory of an accidental homicide. This point is properly raised and preserved for our review, and we have reached the conclusion that the same is well taken.

Accidental or excusable homicide is defined by section 4452, Revised Statutes 1909, as follows:

"Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases: First, in lawfully correcting a child,

apprentice or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; or second, in heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner.''

It will be noted that the evidence of defendant tends to show that his participation in the combat was merely that of a person defending himself, and that he was, therefore, engaged in a lawful act; that while in the act of defending himself, the deceased grabbed him by the throat, and in order to protect himself he shoved deceased away, causing him to stagger and fall. In the fall deceased's head struck the curb and received the fatal wound. If, therefore, defendant's evidence be true, the death occurred by accident or misfortune ''upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and [the killing was] not done in a cruel and unusual manner.'' Such evidence was sufficient to justify an instruction on the theory of an accidental killing and the court, therefore, erred in failing to so instruct.

The Wisconsin statute is almost identical with the above quoted Missouri statute, and the Supreme Court of Wisconsin in two cases, where the evidence was not so favorable to defendant as is the evidence in the case at bar, held that the court erred in failing to instruct the jury on accidental homicide as defined by said statute. [Campbell v. State, 111 Wis. 152; Ryan v. State, 115 Wis. 488.]

It follows that the judgment should be reversed and the cause remanded. It is so ordered. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All of the judges concur.