STATE of Missouri, Respondent,

v.

Earl Roger CAMLEN, Appellant.

No. 57952.

Supreme Court of Missouri,
Court en Banc.

Nov. 12, 1974.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Geo. S. Thompson, Salisbury, for appellant.

WELBORN, Commissioner.

Appeal from judgment of conviction and sentence to 15 years' imprisonment on jury verdict of guilty of assault with intent to kill with malice.

Following the accidental death of her first husband Geneva Boley married appellant, Earl Roger Camlen, in March, 1970. Camlen was around 24 years of age at that time and his wife 16 years older, with five children by her first marriage. Difficulties arose between the couple within a short time and on October 20, 1970, Mrs. Camlen filed suit for divorce. Summons was served on her husband October 22.

On October 27, Mrs. Camlen went bowling at a Brookfield bowling alley at around 6:30 P.M. She saw her husband at the snack bar of the bowling alley and they passed without a word. Camlen left the bowling alley a short time later, took a cab to his brother's house where he was staying, obtained a pistol and returned to the bowling alley. He entered the bowling alley carrying the pistol and went to where his wife was seated, awaiting her turn to bowl. From a distance of six to eight feet he fired at her, the bullet striking her in the left breast. She tried to run and fell and was struck in the left leg by a second bullet. Camlen turned the weapon on himself after either the first or second shot and fired a bullet into his stomach. Mrs. Camlen was rushed to a hospital where emergency surgery was performed which saved her life. She was hospitalized 29 days.

Appellant testified that he had no recollection of what occurred after he first saw his wife at the bowling alley until after he was taken to the hospital for treatment of his wound.

Appellant was charged with assault with intent to kill with malice. He entered a plea of not guilty by reason of mental disease or defect. He was sent to the Fulton State Hospital where he remained for six weeks and was eventually found to be free of mental disease or defect.

At his trial appellant's mother testified that he was seriously ill with sleeping sickness at the age of five years, was hospitalized for 20 weeks, during five of which he was blind. After his recovery, he had blackout spells which continued throughout his life.

Dr. Harry Still, an osteopathic physician specializing in psychiatry, testified that he had examined appellant and diagnosed him as a "schizoid personality with secondary depression."

In rebuttal, the state offered the testimony of Doctor Merrifield, an osteopathic physician on the staff of Fulton State Hospital, who participated in the evaluation of appellant there. Doctor Merrifield testified that his evaluation and examination led to the conclusion that appellant had no mental illness.

The trial court instructed on the defense of lack of responsibility because of mental illness. An instruction was given embodying the provisions of § 552.040, subd. 1, RSMo 1969, V.A.M.S. The court gave a "short form" instruction and refused an instruction tendered by defendant which followed MAI–CR No. 3.72.

In his closing argument defense counsel argued the entire content of § 552.040. In his closing argument the prosecuting attorney stated:

"The question involved here is, is this man going to get away with it on the defense that he has something wrong with his personality; that he's got something wrong with his personality.

"I asked Dr. Still [the expert witness for the defense], I said, 'Well, there's a lot of schizoid personalities walking around,' 'A lot of them.' I asked him, 'Well, do you have a schizoid personality?' [addressed to the appellant], and he said something about, 'Well, it depends upon how I feel in the morning,' did he . . . say that? He said he feels like he has a paranoid personality when he's on the witness stand. And a paranoid personality and a schizoid personality is similar from the standpoint that they're defects in personality.

"Now, let's face it, Friends, when we talk about mental health there are degrees of mental health, but when we talk about mental disease we're talking about someone who is psychotic or we're talking about someone who is neurotic. We're not talking about someone who has a flare in their personality. And I'm telling you that in a case like this where someone tries to kill somebody they don't get off because there's something wrong with their personality.

"Mr. Thompson [appellant's attorney] says, 'He's got all kinds of problems and so forth, and all you folks got to do is to go in that jury room and send him down to the hospital.' For what, treatment?

"What treatment has he had? What treatment has he had since in January when Dr. Still told him that he had problems? Has he had any treatment? Does he think he needs treatment; obviously not. Does his family think he needs treatment; obviously not. Does his lawyer think he needs treatment; obviously not or he would of had it. And they come in here today and try to flim-flam you into this personality situation to try to indicate to you that because of some personality problem you ought to send him down to the State Hospital for treatment. Then they say, 'Now, don't worry about it, he's going to be down there for a long time.'

"We have a hearing in this court and who is going to come to testify at this hearing, the same fellow that was here today [Dr. Carleton Merrifield, employed by

the state hospital at Fulton]. And what's he going to say—

"MR. THOMPSON (interrupting): If it please the Court—

"MR. ALLEN (interrupting): He's going to say the same thing that he said today—

"MR. THOMPSON (interrupting—continuing):—this is presupposing what is going to happen in the future.

"MR. ALLEN (continuing):—and he's going to say—

"THE COURT (interrupting): Overruled.

"MR. ALLEN (continuing): 'No mental disease, no mental defect,' and he's out on the street."

On this appeal, appellant contends that the trial court's ruling on his objection was erroneous, relying on the decision in State v. Johnson, 267 S.W.2d 642 (Mo.1954). Appellant has not cited, but the state has called attention to, the later case of State v. Nickens, 403 S.W.2d 582 (Mo.banc 1966), which is even more directly in point on the question here presented.

In Nickens the trial court gave an instruction covering § 552.040, subd. 1. Defense counsel referred to that instruction in his closing argument. In his closing argument, the prosecutor referred to such argument and argued, in effect, that one doctor had testified at the trial that the defendant had no mental illness and that there would be no problem if the defendant went to a hospital in getting another doctor to testify to the same effect and the defendant would be back on the street.

Relying on Johnson, the court held such argument prejudicially erroneous because it was not proper retaliation, appealed to the prejudice of the jury and "was highly prejudicial to the defense of insanity." 403 S.W.2d at 588.

The state argues that in this case the prosecutor's argument was proper retaliation because, although the court had given only a short form instruction on § 552.040, the defense argument attempted to get the full benefit of all provisions of § 552.040,

including the details of the hearing procedure and the provision making an unfavorable determination conclusive for 180 days.

As above pointed out, MAI–CR No. 3.72 does instruct the jury as to the full content of § 552.040. It must follow that, although the instruction in this case did not cover the details of that statute, defense counsel did have the right to argue such details, and the prosecutor's argument cannot be justified as retaliatory to such argument. The argument here was just as disparaging to the defense of mental illness and as nonfactual as that condemned in Johnson and Nickens. The failure of the trial court to sustain objection thereto was error and requires reversal of this conviction.

Other questions raised on this appeal may not arise on a retrial. MAI–CR will provide the answer to some contentions related to instructions. No prejudice has been demonstrated in the appearance of a private prosecutor, permitted by the trial court to assist in the prosecution. Attention is called, however, to the remarks in State v. Bockman, 251 S.W.2d 607, 609 [6, 7] (Mo.1952), criticizing the custom of permitting employment of special prosecutors. The practice invites error from an excess of zeal which might well be avoided by leaving the conduct of a criminal prosecution entirely in the hands of the elected official upon whom such duty has been placed.

Reversed and remanded.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court en Banc.

SEILER, BARDGETT, HENLEY and FINCH, JJ., concur.

HOLMAN, J., dissents in separate dissenting opinion filed.

DONNELLY, C. J., and MORGAN, J., dissent and concur in separate dissenting opinion of HOLMAN, J.

HOLMAN, Judge (dissenting).

I respectfully dissent. The principal opinion relied on State v. Johnson, 267 S.

W.2d 642 (Mo.1954) and State v. Nickens, 403 S.W.2d 582 (Mo.1966). Those cases hold that the arguments there involved prejudicially disparaged the insanity defense.

The instruction given in this case (similar to MAI–CR 3.72) explained to the jury that if it found defendant not guilty by reason of mental disease he would be committed to a state mental hospital for treatment. It then outlined in detail the conditions and procedure under which defendant could be released. An attorney may always appropriately argue concerning matters contained in an instruction. Certainly a prosecuting attorney may point out that at some future date such a defendant may procure evidence which would warrant a court in ordering his release. However, if the principal opinion is adopted, and is considered in connection with Johnson and Nickens, it would appear very hazardous for a prosecuting attorney to ever refer to the matter of a release of such a defendant. I think this case can be distinguished from Johnson and Nickens on the statements made but, in any event, I would not follow the strict interpretation that has been accorded those cases.

I have the further view that the point in question was not preserved for review because the objection was not sufficient. It is elementary that a proper ground or reason for an objection must ordinarily be stated. Here the attorney merely said, "This is presupposing what is going to happen in the future". That was not a valid reason because, as we have stated, the prosecutor could certainly point out in some manner that defendant might be released after a future hearing. After the objection was overruled and the prosecutor completed his statement the defendant's attorney could have moved to strike or have sought other relief but he did not do so.

For the reasons stated I would affirm the judgment.