STATE of Missouri, Respondent,

v.

Lenwood COLE, Appellant.

No. 30004.

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

Rehearing Denied Oct. 1, 1979.

Allen I. Harris, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Hope E. Thurrott, Spec. Asst. Atty. Gen., Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment on convictions by a jury of murder, second degree, and assault with intent to kill with malice aforethought. In question: the sufficiency of evidence to establish the requisite mental state; admission of evidence of the victims' family status, and a photograph of the crime scene; instruction on voluntary intoxication; failure to give tendered instructions on diminished responsibility, and failure to declare mistrial on the State's argument. Affirmed.

This case arose from the shooting of two police officers in defendant's home at 7434 Canton Avenue, University City, Missouri,[1] Sunday, February 22, 1976. He was indicted on charges of capital murder, § 559.005, Laws of Missouri 1975, and felonious assault with malice aforethought, § 559.180 RSMo. He pleaded not guilty and not guilty by reason of mental disease or defect excluding responsibility.

One week prior to the shooting, defendant was treated for pneumonia at St. Louis County Hospital. He was given a shot of ampicillin and prescriptions for oral ampicillin and codeine to be taken for the ensuing week. He missed some work during the week as a result of his illness, but had returned to work on Saturday before the shooting. He worked the night shift, returned home Sunday morning and went to bed.

He arose about noon Sunday. At 2:00 p. m., he took a codeine tablet, left home and drove to a nearby bowling alley. Enroute, he drank one-half pint of bourbon whiskey. He went later to a lounge where he drank two beers and a mixed drink.

He returned home between 7:00 and 7:30 p. m., and took one tablet each of ampicillin and codeine. He went to his room and called his oldest son, age eight. He told his son he was to be the man of the house, then called his other two sons and told them they were to mind their older brother. Following this conversation with his sons, defendant asked his wife if she wanted her freedom. During this conversation, the second son brought a vase of flowers to defendant which he flung across the room, breaking the vase. Without coat or shoes, defendant went to the front door, told his wife life did not matter any more, that she would be better off without him, and that insurance would take care of her and the children. He left in his car; and, at this time, about 8:00 p.m., defendant's wife made the first of several calls to the University City Police Department. She informed the dispatcher her husband was "acting crazy" and had just left the house. She asked for help. A few minutes later, she called the police again and informed them defendant was home. Defendant had returned home and gone to bed. Two or three minutes later, Officer Didden arrived; Officer Graham arrived shortly thereafter. Defendant's wife admitted them to the living room area of the house.

Defendant heard the voices of the two officers and the squelch of their radios. He came from his bedroom to the living room and asked the officers what they were doing there. One of the officers told him they had been called by his wife for a family disturbance. Defendant said there was no disturbance and told the officers to leave. The officers insisted they would stay until the disturbance was settled. Defendant told the officers to leave several more times and took their names and badge numbers with threats to call their captain to have them removed. Defendant left the room, returned with a shotgun, and said, "I told both of you I want you out of here and I'm not telling you anymore." He then fired three blasts. Two of them hit and killed Officer Graham; the third wounded Officer Didden in the jaw and neck. Defendant's

---

1. Venue was changed on defendant's application on ground he could not have a fair trial in St. Louis County.

wife took the gun from defendant, after which he called the University City Police and reported, "I just killed them. I told them to get out of my house, they wouldn't get out of my house. I just killed two of them here. Didden and Graham."

One or two minutes later defendant was arrested, handcuffed and placed in a police car. He was crying, and stated a couple of times, "I shot them". Upon arrival at the police station, defendant was given a breathalyzer test and a reading of .20 was recorded. A videotape confession was also recorded.

That defendant shot the officers was conceded. Three doctors addressed the issue of defendant's mental state at the time of the shooting. Dr. Nathan Mark Simon, believed the combination of illness, alcohol and drugs produced a "toxic psychosis" in which defendant was not responsible for what he was doing, where he could not distinguish between right and wrong, and where his actions were impulsive.

Dr. Paul A. Dewald could come to no conclusions on defendant's state of mind. His hypothesis was that defendant's generally weakened psychological and physical condition, codeine and alcohol ingestion, and other things "may very well have caused a toxic state, a delirium * * * in which an individual is subject to, at times, uncontrollable or unanticipated behavior pattern."

Dr. Joseph S. Shuman believed that defendant, at the time of the shooting, was a normal man who, perhaps because of alcohol he had consumed but probably not because of the codeine, had used poor judgment.

Lay witnesses on the issue of defendant's mental state at the time of the shootings stated he did not appear drunk and described him as reasonably alert and sober.

▊ Appellant contends the evidence was insufficient to sustain conviction in that the psychiatric testimony on the issue of mental state and intent was such that the court should have directed verdicts for defendant on the charges against him. He argues first, that such testimony warranted directed verdicts on his defense of not guilty because of mental disease or defect, excluding responsibility under Chapter 552 RSMo; and second, that he was entitled to have reduced charges of manslaughter and assault without malice submitted to the jury on his theory of diminished responsibility negating specific elements and hence reducing the charge.

With respect to the defense of mental disease or defect, § 552.030.7 RSMo provides:

> "All persons are presumed to be free of mental disease or defect * * * The issue of whether any person had a mental disease or defect excluding responsibility for his conduct is one for the jury to decide upon the introduction of substantial evidence of lack of such responsibility. * * * Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take the issue to the jury."[2]

Defendant had the benefit of testimony from Dr. Simon and Dr. Dewald which, under the statute, entitled him to present the issue of mental disease or defect to the jury. Also present in this case was the testimony of Dr. Shuman that defendant was free of mental disease or defect excluding responsibility. Thus, he was not entitled to a directed verdict because the presumption of freedom from mental disease or defect does not disappear, and it alone is sufficient to take the issue to the jury. *State v. Greenhaw*, supra. The issue was properly submitted by Instruction 5 in form MAI–CR 3.70.

Appellant makes the same argument presented in *State v. Anderson*, 515 S.W.2d 534 (Mo. banc 1974), where the concept of "diminished responsibility" was discussed,

**2.** The statute has been construed literally. See, e.g. *State v. Williams*, 521 S.W.2d 169 (Mo. App.1975); *State v. Greenhaw*, 553 S.W.2d 318 (Mo.App.1977); *State v. Vansandts*, 540 S.W.2d 192 (Mo.App.1976); *State v. Holmes*, 439 S.W.2d 518 (Mo.1969).

and § 552.030.3(1)[3] RSMo was read in conjunction with Model Penal Code (ALI) § 4.02(1). It was determined that if defendant introduced the evidence envisioned by § 552.030.3(1), the jury must be instructed on offenses which are committed in a mental state less than that required for conviction on charged offenses. Defendant Cole received both considerations. Defendant was permitted to adduce evidence on mental disease or defect, and the jury was instructed on the lesser offenses of manslaughter, Instruction 8 (MAI–CR 2.30/6.08), and assault without malice aforethought, Instruction 10 (MAI–CR 2.30/6.24), all as required by *State v. Anderson,* supra.

The State elicited testimony from Officer Didden that he was a married man with two children, and that Officer Graham had been a married man with children. Appellant contends the court erred in overruling his objections to such questions on the ground of irrelevance. He asserts that the family status of the officers had no relevancy, and the questions to that effect were asked "to influence the jury."

▇▇ Evidence of the family status of the crime victims was not relevant to the issues, *State v. Johnson,* 349 Mo. 910, 163 S.W.2d 780 (1942); however, prejudice must flow from such error for reversal to ensue, *State v. Smith,* 534 S.W.2d 604 (Mo.App. 1976). As previously demonstrated, the only issue of consequence was the mental state of defendant. It is not likely that the evidence in question affected the jury in resolution of that issue, and appellant makes no demonstration of prejudice beyond his assertion of its existence. To the contrary, defendant, himself, utilized the victims' family status in closing arguments.

Appellant charges the court erred in admission in evidence of Exhibit 21 in that it was "a photograph showing a lot of blood, did not add any relevant evidence * * * was at most cumulative and was highly prejudicial."

▇ It is within the discretion of the trial court to determine whether potentially prejudicial or inflammatory evidence should be admitted, and relevance is the principal criterion. *State v. Johnson,* 539 S.W.2d 493 (Mo.App.1976), cert. den. 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779. Relevant evidence is not inadmissible because it is prejudicial. Nor is it a valid objection that a witness has described matters depicted in the photographs if it is otherwise relevant. *State v. Jackson,* 499 S.W.2d 467 (Mo.1973). Photographs of a crime scene are admissible if they depict the condition and circumstances surrounding the crime and aid the jury on a material issue. *State v. Rogers,* 523 S.W.2d 344 (Mo.App.1975).

▇ Exhibit 21 depicts the front door area of the Cole home, shows some blood, a nightstick, broken glass, a cigarette and a pen. It offers corroboration of evidence to show absence of provocation. See *State v. Aubuchon,* 394 S.W.2d 327 (Mo.1965); and compare *State v. Floyd,* 360 S.W.2d 630 (Mo.1962), where admission of photograph of body in decomposed state as to preclude identification could serve no purpose except to inflame the jury.

The court gave Instruction 13 (not in MAI–CR) as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant was intoxicated by drugs or alcohol at the time, such intoxication is in law no excuse for or defense to such offense as you find to have been committed. Voluntary intoxication is never a defense to a criminal charge. The fact of such intoxication, if you find it to be a fact, is only to be considered by the jury in connection with all other facts, in determining the guilt or innocence of the defendant, and the degree of guilt, if you find he is guilty."

Appellant, although conceding "that such instructions have been approved in the past", contends the court erred "for the

---

**3.** "Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible:

(1) To prove that the defendant did or did not have the state of mind which is an element of the offense * * *."

reason that said instruction is a comment on the evidence and further misstated the evidence in this case."

■ An instruction that voluntary intoxication is not a defense is properly given where, as in this case, there is evidence that the accused had been drinking and was intoxicated at the time of commission of his crime. See *State v. Street*, 498 S.W.2d 523 (Mo.1973), and note approval of the form and language of Instruction 13. The instruction is a correct statement of the law as it existed at the time of this case, with respect to the effect of voluntary intoxication on defendant's culpability for his acts.[4] It did not require the jury to find defendant to have been voluntarily intoxicated; it only directed what the jury must consider if voluntary intoxication was found.

■ Defendant offered and the court refused to give instructions as follows:

### Instruction No. A.

"The court instructs the jury that if you find that at the time of the offense charged against the defendant he had a mental disease or defect sufficient to deprive him of the ability to act unlawfully, wilfully, knowingly, deliberately and with premeditation, then you may not find him guilty of first degree murder."

### Instruction No. B.

"If you find and believe that at the time of the offense charged against the defendant, he had a mental disease or defect sufficient to deprive him of the ability to act wilfully, feloniously, premediatedly or with malice, then you may not find him guilty of either first or second degree murder."

Appellant argues that with recognition in Missouri of diminished responsibility, *State v. Anderson*, supra, he was entitled to his offered instructions in submission of his "special negative defense" based on diminished responsibility.

*State v. Anderson*, supra, determined that if a jury considers and rejects acquittal of the accused on the defense of mental disease or defect excluding responsibility, it may yet consider acquitting him of a greater crime and yet convict him for a lesser included offense which requires a lesser mental state. Under that thesis, Richard Paul Anderson's conviction of murder second degree was reversed, and his cause remanded for new trial, where, in the event there was evidence of diminished responsibility, the court would be required to instruct on lesser included offenses. The error in *State v. Anderson*, supra, is absent from this case. Defendant's evidence on diminished responsibility was received; the jury was fully instructed by Instructions 3 and 10 (MAI–CR 2.30/6.08 and MAI–CR 22.30/6.24) with respect to its option to convict of the lesser included offenses. Defendant's theory that his proposed Instructions A and B[5] were necessary to inform the jury of the nature of his diminished responsibility defense is erroneous. The evidence introduced at trial and the instructions on lesser included offenses, as required by *Anderson*, served the function.

■ The State argued in rebuttal:

"First of all, this talk about Fulton, I mean, that whole argument just doesn't make any sense. There's nothing wrong with this man as he sits here today. You know that, the psychiatrists told you that. If he was sent to Fulton, how long do you think he'd—."

Defendant objected and moved for mistrial on grounds the argument "disparages the mental defense". He contends, with citation of *State v. Johnson*, 267 S.W.2d 642 (Mo.1954); *State v. Nickens*, 403 S.W.2d 582 (Mo.1966); and *State v. Camlen*, 515 S.W.2d 574 (Mo.1974), that the quoted argument disparaged the defense of mental disease or defect, and that it was a call for imprison-

---

4. No opinion is expressed as to the accuracy of the instruction after the January 1, 1979 effective date of § 562.076. Note the suggested instruction MAI–CR 3.30.1.

5. Cf. MAI–CR 3.74, effective January 1, 1979, suggested for submission under *State v. Anderson*, 515 S.W.2d 534 (Mo. banc 1974).

ment in the penitentiary even if the jury believed defendant was suffering from mental disease or defect at the time of the shooting.

Appellant's citations proscribe arguments that a defendant should be convicted irrespective of evidence tending to show a defense of insanity because acquittal on that ground would result in his presence on the streets committing new crimes. The argument in this case does not fall within the proscription of the cited cases. Its interrupted state does not convey the notion that defendant should be imprisoned regardless of the quality of his defense of insanity. Indeed, it may not be said with any certainty what counsel had in mind when interrupted.

■ In another instance the State argued:

> "Think for a minute what a verdict of Manslaughter would mean in a case like that to people. They would say, 'Look at this. There isn't anything worse than that. This man is getting off with Manslaughter.' It isn't easy to deter that kind of crime."

Defendant objected "to what a verdict of manslaughter could mean to people". He contends the State was not arguing for law and order, but was asking the jury to disregard whatever the evidence showed on degree of crime, and to convict to make an example of defendant.

■ This argument falls within familiar rules that the State may argue: The necessity for law enforcement, and ask for severe penalty as a deterrent to others, *State v. Raspberry*, 452 S.W.2d 169 (Mo.1970); the prevalence of crime in the community, personal safety of its inhabitants and the jury's duty to uphold the law, *State v. McKinney*, 475 S.W.2d 51 (Mo.1971); that the jury verdict should serve as a warning, *State v. Burnett*, 429 S.W.2d 239 (Mo.1968); that failure to convict would open the floodgate for similar conduct in the future, *State v. Rodriguez*, 484 S.W.2d 203 (Mo.1972); that correction of the defendant is part of the jury's duty in prevention of crime. *State v.*

*Wright*, 515 S.W.2d 421 (Mo.1974). See also *State v. Jackson*, 477 S.W.2d 47 (Mo.1972), where the State's comment that people say courts are "too easy on these guys" was within the scope of permissible argument covering prevalence of crime and the necessity for strict law enforcement.

Judgment affirmed.

All concur.