STATE of Missouri, Respondent,

v.

Leon NEVELS, Appellant.

No. WD 31218.

Missouri Court of Appeals,
Western District.

Dec. 2, 1980.

Clifford A. Cohen, Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., SWOFFORD, J., and MURPHY, Special Judge.

PER CURIAM:

Appellant Leon Nevels was convicted of second–degree murder in the death of his six–year–old stepson, Rodney Epperson, and of assault with intent to maim and with malice aforethought upon his two–year–old stepdaughter, Alecia Epperson.[1] In accordance with the jury verdict, the defendant was sentenced to 50 years' imprisonment for the murder and 20 years' imprisonment for the assault. The trial court ordered the two sentences to be served concurrently.

Defendant appeals, claiming that the court erred in three particulars–first, that he refused to give instructions on excusable homicide and excusable assault; second that he declined to declare a mistrial for alleged improper jury argument by the prosecuting attorney; and, third, that he overruled objections to the prosecuting attorney's reference to defendant's earlier trial.

We affirm the judgment of conviction of murder for Rodney's death and reverse and remand the conviction for assault upon Alecia.

The facts are as follows:

On September 24, 1976, appellant and his wife, Felicia, mother of Rodney and Alecia, brought six–year–old Rodney to Children's Mercy Hospital in Kansas City. He was dead. His body was covered with abrasions, bruises, scars and strap marks. A police officer thus described the marks on the youngster's body: "There was numerous bruises over the boy's body. His eyes were swollen. His lips were both swollen. He had bruises around his chest, all down his back and on his legs and arms. He also had numerous abrasions, looked like strap marks of some type, all over his body." A physician testified that the wounds, in his opinion, had been inflicted at various times within the preceding week, and some within recent hours. An autopsy revealed that there were areas of hemorrhage into the

lung and into the areas of fat around the kidney, which would have been caused by a blunt force injury. There was hemorrhage in and around the brain, and swelling of the brain. The major factor causing his death, according to the pathologist, was "the head injury, bleeding inside the head and swelling of the brain". The head injury was caused by some blunt force. The shock of the earlier injuries would have been a contributing factor.

The children's mother, Felicia, testified that appellant had not worked on the day of September 24. He picked her up at 4:30 o'clock p. m. at the Alameda Plaza Hotel where she worked as a housekeeper. Upon their arriving home and entering the house, Leon told Felicia that he had seen Rodney on top of Alecia ... although Felicia said that she herself had seen nothing. The defendant first took Rodney into the bathroom, filled the bathtub, and put his head under water. He then brought him out and started beating him with a belt. He then threw Rodney across the room, striking his head on the floor. He stomped his stomach with his foot. Rodney became unconscious. They threw cold water on him attempting to revive him. The mother gave him mouth–to–mouth resuscitation without success. They then took him to Children's Mercy Hospital where he was found to be dead.

Felicia further testified that the defendant had commenced to punish both Rodney and Alecia about a week before the day of his death. He would put their heads under water in the bathtub, strike them with his hands and fists, whip them with an extension cord and a red vinyl belt. Rodney's offenses included sexual play with two–year–old Alecia, and failing to learn to write his ABC's. These two offenses, according to defendant's testimony, triggered the punishment which resulted in Rodney's death.

1. This is this case's third trip to this court. Defendant's conviction upon the first trial was affirmed, State v. Nevels, 571 S.W.2d 736 (Mo.App.1978). The second case was upon a Rule 27.26 motion, which resulted in a new trial. State v. Nevels, 581 S.W.2d 138 (Mo. App.1979).

Appellant's first point is that the court erred in refusing to instruct the jury on the subject of excusable homicide, in Rodney's case, and excusable assault in Alecia's, § 559.050, RSMo 1969.[1]

■ Defendant's proffered instruction in Rodney's case instructed the jury to acquit the defendant on that ground "if the death of Rodney Epperson was the result of accident or misfortune in lawfully correcting Rodney Epperson without unlawful intent and without reckless disregard for human life and safety", MAI–CR 2.28. Appellant maintains that his own testimony supports such an instruction. If defendant's testimony does present a defense of excusable homicide, then he is entitled to an instruction on the subject, even though his testimony may be contradicted by all the other evidence in the case. *State v. Wooten*, 498 S.W.2d 562 (Mo.1973); *State v. Coff*, 267 Mo. 14, 183 S.W. 287 (Mo.1916).

We do not think, however, that defendant's own testimony, even if believed, supports the defense of excusable homicide. Defendant's testimony on direct examination was that he would start off spanking the children, and "gradually went up from belt to cord to red strap. Sometimes ... that was about as far as it went, that red strap." Asked whether he found out that "those things didn't work, either", he replied: "They didn't work." His testimony continued:

Q. So what would you do when you thought that the belt or the strap or the cord wasn't enough?

A. It was kind of like, you know, more like an illustration, when people have a debate, you know, you think, well, you can have an intelligent debate, and somehow lose control or get out of hand, and, in any case, that is what it was.

Q. Did you lose control when you were whipping them ever?

A. Many times, because I'll say right now ... I just intended to whip them, you know.

With reference to the September 24th incident, his testimony was as follows:

Q. What did you do when you realized on September 24 that he hadn't worked on the alphabet?

A. I just lost (control).

Q. What did you do?

A. I *first started* whipping him (our emphasis).

Q. What did you whip him with, Leon?

A. Well, I think it was first–at *first*, it was some kind of a belt, and then from the belt to the red strap.

He at no time denied Felicia's testimony that he had struck the children with his fist, had thrown Rodney across the room, had stomped his abdomen and had put his head under water in the bathtub. Asked whether he was "in any way denying responsibility for Rodney's death", he answered: "Not in the least, I am responsible for it". On cross–examination he was asked if it was a fact that he freely admitted that he was "responsible for Rodney's death and the horrible wounds we have seen on this poor little boy". He answered: "That is a fact." Again:

Q. You are telling me that you whipped him with your hand and then a belt and then that strap, and that you caused him to fall to the floor and fracture his skull but that you didn't intend to hurt him, is that a fact?

A. That is a fact.

■ MAI–CR 2.28, which defendant's proffered instruction follows, correctly declares the law of excusable homicide under § 559.050; *State v. Aitkens*, 352 Mo. 746, 179 S.W.2d 84 (1944). But defendant's evidence, even if believed and given the most favorable construction to him, does not bring defendant's so–called "correction" of the youngster within that instruction.

■ Appellant emphasizes his testimony that he did not "intend" to kill the child and did not "intend" to cause permanent inju-

1. Excusable homicide and excusable assault in child discipline cases are now covered by § 563.061, RSMo 1978.

ries, or to maim him. Where a defendant has used force likely to cause death or great bodily injury, his naked assertion that he did not have the specific purpose to cause death or great bodily harm is not sufficient to require an excusable homicide submission. *State v. Lamborn*, 452 S.W.2d 216 (Mo.1970); *State v. Cook*, 557 S.W.2d 484 (Mo.App.1977).

The alleged assault upon Alecia presents a different case. The excusable assault instruction should have been given under the evidence. The evidence focuses upon Rodney and the evidence on the punishment inflicted upon Alecia is quite generalized as to time and as to the quantum of force used. There was no evidence of punishment of Alecia on the 24th. In defendant's statement to the police, which was introduced in evidence by the state, he said, referring to Alecia:

> "The only times that I whipped her was when she misbehaved, I never did whip her too much."

He then told about sticking her thumb with a pin to stop her sucking her thumb. (He was not charged with that incident.) Asked if there was "any other time you have harmed Alecia or used severe disciplinary measure", he answered, "No".

In his testimony on the trial, he said he hadn't whipped Alecia "in quite a while before the 24th"; that he couldn't recall whipping her with the red strap; that he intended to whip her "in the manner that anyone else would".

This testimony called for an excusable assault instruction.

If it was believed by the jury and construed by them favorably to the defendant, they could believe that defendant's chastisement of Alecia was "lawful correction . . . without unlawful intent" and "without reckless disregard for human life and safety". *State v. Patterson*, 443 S.W.2d 104, 106 (Mo. banc 1969); *State v. Aitkens, supra*; § 559.050, RSMo 1969; MAI–CR 2.28 and "How to Use This Book", paragraph 6. The failure to instruct the jury on defendant's defense of excusable assault is reversible error.

Appellant next complains of the court's refusal of a mistrial for allegedly improper argument by the prosecuting attorney. The argument to which exception is taken was that life imprisonment was not sufficient to keep the defendant "off the streets", but that only a sentence of 150 years on each count was sufficient for the protection of society and society's children.

The appellant says, first, that this argument conveyed to the jury the suggestion of a parole for the defendant if he received a sentence of life imprisonment, whereas if he received 150 years on each count there would be no possibility of parole during the normal life span.

It should first be noted that the jury did not accept the prosecutor's suggestion. They gave the defendant 50 years on the murder count and 20 years on the assault count. Had they adopted the prosecutor's suggestion and assessed a sentence of 150 years on each count, we would have a different case. In *State v. Lewis*, 443 S.W.2d 186, 190 (Mo.1969), the jury did adopt the prosecutor's suggestion of a term of 50 years' imprisonment. Furthermore, in the *Lewis* case, it was rather a bald invitation by the prosecuting attorney to the jury to transfer responsibility for length of term from the jury to the parole board. The prosecutor's suggestion was that if the jury should err on the side of excess in punishment, that the parole board could correct its mistake. The case is quite different from the one we are now looking at.

While any reference by the prosecutor to parole, whether direct or oblique, has no place in a prosecutor's argument, the trial court deemed the criticized argument not sufficient to cause a mistrial. The jury did not necessarily get from the argument the meaning which defendant gives to it. We find no abuse of discretion in the trial court's ruling.

Defendant then says that the prosecutor's argument called for a mistrial because it referred to "the possibility of future criminal acts of appellant, and were an attempt to arouse in the jurors personal hostility toward or fear of appellant."

In the cases cited by the appellant, where convictions have been reversed for improper argument by the prosecutor, there have been attempts by the prosecutor to arouse apprehension for the personal safety of the jurors or members of their families. *State v. Groves*, 295 S.W.2d 169 (Mo.1956); *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524 (banc 1947); *State v. Ellinger*, 549 S.W.2d 136 (Mo.App.1977); *State v. Heinrich*, 492 S.W.2d 109 (Mo.App.1973). In *State v. Couch*, 523 S.W.2d 612 (Mo.App.1975), the court dealt with the prosecutor's argument only by way of *dicta*, and the prosecutor's argument is not set out *in haec verba* in the opinion. The trial court did not abuse his discretion in refusing a mistrial. *State v. Crawford*, 478 S.W.2d 314, 320 (Mo.1972); *State v. Coleman*, 524 S.W.2d 27, 31 (Mo. App.1975).

We note that the jury retired at 10:50 a. m. and returned their verdict at 5:15 p. m.–scarcely a jury acting under the stimulus of aroused passions.

Appellant's final point is that the court erred in overruling his objection to the following reference to an earlier trial: The prosecutor's question was this:

> "Q. And do you admit that on a previous occasion, at the previous trial, that you did admit that you whipped the little girl with that belt?"

There was not any reference to the verdict in the earlier trial, which is proscribed by Supreme Court Rule 27.18. There is no general rule that a previous trial may not be referred to. Indeed, it is sometimes unavoidable. There was no error in the prosecutor's reference to an earlier trial. *State v. Matha*, 446 S.W.2d 829 (Mo.1969); *State v. Casey*, 338 S.W.2d 888 (Mo.1960).

As to the conviction on Count I for the murder of Rodney, the judgment is affirmed. The judgment of conviction on Count II for the assault upon Alecia, is reversed and that case is remanded for a new trial.