STATE of Missouri, Respondent,

v.

William MENSAH, Appellant.

No. 62749.

Supreme Court of Missouri,
Division No. 2.

Dec. 8, 1981.

Leslie Edwards, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

MANFORD, Special Judge.

This is an appeal from a conviction of murder, second degree, a Class A felony under § 565.004, RSMo 1978, punishable under § 565.008.2 RSMo 1978.[1] The jury imposed a life sentence, vesting exclusive appellate jurisdiction in this court under Mo. Const. art. V, § 3.

The sufficiency of the evidence is not challenged, so a brief summary of the facts suffices. Appellant and the victim, Vickie Miller, shared an apartment at 4049 West Pine in St. Louis. On the morning of April 28, 1979, the victim's mother telephoned. Appellant answered the phone, told the mother that he was hurt, but when she asked about the victim, appellant hung up the telephone. The mother immediately called again and appellant answered, requesting that she call an ambulance. Paramedics and the mother arrived at the apartment within moments of each other. Appellant was found bleeding from his abdomen. The victim was dead and although covered with blood, no physical wounds were observed. A later autopsy revealed that she died by strangulation. The defense was that appellant suffered from a mental disease or defect, excluding responsibility under Chapter 552, RSMo 1978.

1. All statutory references are to RSMo 1978 unless otherwise noted.

Appellant presents one point of error on appeal, alleging that the trial court erred by refusing to grant a mistrial after the prosecution, in closing argument, stated that if appellant was convicted, he would receive medical treatment. The alleged error was properly preserved under Rule 29.11(d).

During the taking of testimony, the following exchange took place between the prosecutor and the defense witness, Dr. Bratkowski:

"Q. I have a couple. Are you telling the jurors he didn't know he was coming here, for Trial this week?

A. To the best of my knowledge he didn't know, at least I didn't tell him.

Q. Are you telling the jurors he doesn't know what's going on?

A. I think he knows what's going on.

Q. He knows what's going on? In fact, you screened him for that specific purpose, to make sure he knows what's going on, that he's competent to stand Trial?

A. Yes, but—

Q. He knows what this is all about?

A. Right.

Q. He can cooperate with his lawyer?

A. Yes.

Q. Doctor, if somebody is confined to the penitentiary and needs psychiatric help, they get transferred to Fulton—

MS. DOCKERY: Your Honor, I object, irrelevant.

THE COURT: Sustained.

MS. DOCKERY: I would ask that the jury be instructed to disregard.

THE COURT: The jury is so instructed.

MS. DOCKERY: I'd like to approach the bench.

(Counsel approached the bench and the following proceedings were had out of the hearing of the jury:)

THE COURT: That has no bearing on the issue.

MR. CHANCELLOR: Don't you think the jury's entitled to know that he's saying now he needs mental health—if they put him in the penitentiary he is not entitled to any? He can get mental help—

MS. DOCKERY: I request for a mistrial at this time, Your Honor.

THE COURT: Overruled, let's proceed."

The issue of post-conviction medical treatment arose during final argument by the prosecutor. The record reveals:

"MR. CHANCELLOR: I said by the greater weight of the credible evidence, ladies and gentlemen, and I want to tell you something. If you do that, if—you need not fear that if he needs any kind of medical treatment he won't get it—

MS. DOCKERY: Your Honor, I object, that's totally beyond the scope of the evidence.

THE COURT: Sustained and—

MS. DOCKERY: Ask the jury be instructed to disregard it.

THE COURT: The jury is so instructed.

MS. DOCKERY: Your Honor, I ask to approach the bench.

THE COURT: Never mind, let's proceed. I have sustained your objection. I've told the jury.

MS. DOCKERY: There's one further request I wish to make, Your Honor, then I would request a mistrial.

THE COURT: Overruled, you have one minute. Mr. Chancellor let's continue.

MR. CHANCELLOR: I ask you to call upon your common sense in that regard.

MS. DOCKERY: Your Honor, I object to this line of evidence.

THE COURT: Overruled."

The trial court is accorded wide discretion as to the scope of argument by counsel as it relates to whether or not an improper argument is so prejudicial under the facts and circumstances of a particular case to warrant a reprimand of counsel or a discharge of the jury. Reversal will not be granted unless an abuse of that discretion demonstrates prejudice to an accused. *State v. Olds*, 603 S.W.2d 501 (Mo. banc 1980). Such discretion is premised upon the opportunity of the trial judge to observe the matter and weigh the prejudicial effect, if any, upon the jury. *State v. Hutchinson*, 458 S.W.2d 553 (Mo. banc 1970); *State v. Raspberry*, 452 S.W.2d 169 (Mo.1970). The

function of this court, in review, is to determine if the denial of a mistrial by the trial court on alleged grounds of prejudicial argument by the prosecution is an abuse of its discretion as a matter of law. *Raspberry* at 173.

■ Appellant relies upon *State v. Ralls,* 583 S.W.2d 289 (Mo.App.1979), wherein the court on appeal reversed a conviction upon improper identification of the accused and such evidence was argued to the jury. The court ruled that refusal to grant a mistrial was error. Appellant also relies upon *State v. Johnson,* 267 S.W.2d 642 (Mo.1954); *State v. Nickens,* 403 S.W.2d 582 (Mo. banc 1966); and *State v. Camlen,* 515 S.W.2d 574 (Mo. banc 1974).

*Johnson, Nickens* and *Camlen* are distinguishable because they involved prejudicial appeals to the juries' fears and apprehensions that a successful mental defect or disease defense would result in the release of the accused and the commission of future antisocial acts. No such suggestion was made in the instant case. These three cases also involved the failure of the trial court to sustain a defense objection. In the instant case, the objections were sustained and the jury was instructed to disregard. From the record herein, it is arguable that the jury could glean from the portion of the argument attacked in this appeal the meaning appellant gives to it.

*Ralls* is distinguishable since it involved the question of sufficient evidence to convict; and the hearsay evidence improperly quoted in the final argument went directly to a disputed identification of the accused by a sole witness. Where "the matter referred to [is] not a strongly disputed, decisive issue as was the identification issue in *Ralls* ... the trial court will not be found to have erred in failing to grant a mistrial." *State v. Thompson,* 610 S.W.2d 629, 636 (Mo.1981).

In the instant case, the suggested inference that the jury would disregard the court's instructions and appellant's claimed defense appears sufficiently remote so that the trial court's action in sustaining appellant's objection and instructing the jury

was a defensible alternative to the declaration of a mistrial. *State v. Nevels,* 609 S.W.2d 725 (Mo.App.1980).

Notwithstanding *Nevels,* the instant case is most analogous to *State v. Cole,* 588 S.W.2d 94 (Mo.App.1979), wherein the accused unsuccessfully advanced the defense of mental disease or defect to the charge of murder second degree and assault with malice. The prosecution in rebuttal argued:

"'First of all, this talk about Fulton, I mean, that whole argument just doesn't make any sense. There's nothing wrong with this man as he sits here today. You know that, the psychiatrists told you that. If he was sent to Fulton, how long do you think he'd—.'" *Cole* at 99.

The accused objected and moved for a mistrial on the premise that the prosecutor's remarks disparaged the defense of mental disease or defect. On appeal, the court refused to find error in the refusal to grant a mistrial. The reviewing court declared:

"Appellant's citations proscribe arguments that a defendant should be convicted irrespective of the evidence tending to show a defense of insanity because acquittal on that ground would result in his presence on the streets committing new crimes. The argument in this case does not fall within the proscription of the cited cases. Its interrupted state does not convey the notion that defendant should be imprisoned regardless of the quality of his defense of insanity. Indeed, it may not be said with any certainty what counsel had in mind when interrupted." *Cole* at 100.

In the instant case, appellant's objections were sustained and the jury directed to disregard. The court further admonished the jury to be guided only by the evidence and the court's instructions. The court cautioned the jury not to consider closing arguments as evidence. Under the facts and circumstances herein, it cannot be said that the refusal by the trial court to grant a mistrial was, as a matter of law, an abuse of discretion, *Raspberry, supra.*

The judgment is affirmed.

WELLIVER, P. J., HIGGINS and SEIL-ER, JJ., and PREWITT, Special Judge, concur.