STATE of Missouri, Respondent,

v.

William "Pete" MANNON, Appellant.

No. 63674.

Supreme Court of Missouri,
En Banc.

Aug. 31, 1982.

James R. Robison, Michael R. Baker, Sikeston, for appellant.

John Ashcroft, Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Defendant was convicted by a jury of conventional[1] second-degree murder (§ 565.004)[2] and sentenced to thirty years imprisonment. He appealed to the Missouri Court of Appeals—Southern District which affirmed the conviction. This Court sustained appellant's motion for transfer after opinion.

The principal reason for transfer was the holding by the court of appeals that intoxication is not a defense to conventional second-degree murder because, the court said, the specific intent to kill or do great bodily harm is not required as an element of conventional second-degree murder relying upon the southern district's earlier case of *State v. Gullett,* 606 S.W.2d 796 (Mo. App. 1980).

1. The term "conventional" second-degree murder is used to distinguish it from felony murder in the second degree. See MAI–CR 2d 15.14 for murder second degree—conventional, and MAI–CR 2d 15.16 for murder second degree—felony.

2. Statutory references are to RSMo 1978, unless otherwise indicated.

The evidence showed that Ricky Brooks was fatally shot by appellant at the Crystal Inn in Charleston, Missouri, at around 1:00 a.m. on March 1, 1980. The events leading up to the shooting began around 11:00 a.m. on February 29, 1980. At that time, appellant, who had just returned to East Prairie, Missouri, from his home in Pine Bluff, Arkansas, with Wanda Carter, his girlfriend, went to the Main Street Tavern in East Prairie, Missouri. At around 12:00 noon, Ms. Carter came by the tavern to get appellant to go to lunch with her at her mother's. Appellant was drinking at that time.

After lunch, at around 1:30 or 2:00 p.m., they both returned to the Main Street Tavern, where they stayed the remainder of the afternoon. Appellant had had eight to ten beers when Ms. Carter left at 6:00 p.m. Appellant stayed at the tavern, drinking continuously, until Ms. Carter returned at 8:30 p.m. Ms. Carter testified that at the time she returned to the tavern, she saw the appellant in the most intoxicated condition she had ever seen him in during the eight years that she had known him. He was wobbling everywhere and he did not make any sense when he tried to talk.

Similarly, Clifford Griggs, the owner of the Main Street Tavern, testified at the trial that he had known the appellant for five years and that the appellant was in the worst shape that he had ever seen him in. In addition, Harry Lee Lindley, a man who testified that he had known the appellant for seventeen or eighteen years, stated that he was at the Main Street Tavern that night and when he stopped the appellant to say a few words to him, the appellant was so intoxicated that he just looked at Mr. Lindley as though he did not even know him.

Mr. Griggs also testified that he had seen the appellant with a .38 caliber pistol, that appellant had showed it to some friends at the tavern, and that when Mr. Griggs tried to persuade appellant to leave the gun there with him, he refused.

Ms. Carter remained with appellant at the tavern until 11:00 p.m., during which time appellant continued to drink. She tes-tified that at that time, appellant was more drunk than he had been at 8:00 p.m. Ms. Carter left the appellant and went to another bar in East Prairie, Missouri. Appellant joined her there at around 12:00 midnight and they remained there until appellant had one more beer and they left for the Crystal Inn in Charleston, Missouri.

They arrived at the Crystal Inn at around 12:30 a.m. and appellant had two more beers. Appellant, by this time, was so intoxicated that he was "totally out," according to testimony by Ms. Carter.

In the meantime, the victim, Ricky Brooks, had entered the Crystal Inn at around 11:30 p.m. Mr. Brooks and the appellant had no contact until 1:00 a.m. when Verlin Uthoff, the owner of the Crystal Inn, started to close the bar and people began to leave. Mr. Uthoff testified that while appellant, Mr. Brooks, and several other people were in the hallway near an exit, he heard appellant say, "Don't tell me to go out first" and then he heard a blast and saw a man fall. The man turned out to be Ricky Brooks who had a gunshot wound in the abdomen.

Testimony was conflicting as to whether appellant made the above statement. Mr. Utoff testified that he was "absolutely certain" that it was the appellant who made the statement in the hallway, but Carl Ray Matheny testified that he was leaving with the appellant in the hallway and did not hear any conversation between the appellant and the victim. An ambulance arrived shortly and transported Ricky Brooks to the nearest hospital, but he died en route.

The case was submitted to the jury on conventional second-degree murder (MAI–CR 2d 15.14) and Manslaughter (MAI–CR 2d 15.18). The court gave, at the insistence of the state and over appellant's objections, Instruction No. 7 on intoxication. The instruction reads:

The Court instructs the jury that if you find and believe from the evidence that the defendant was intoxicated by drugs or alcohol at the time, such intoxication is in law no excuse for or defense to such

offense as you find to have been committed. *Voluntary intoxication is never a defense to a criminal charge.* The fact of such intoxication, if you find it to be a fact, is only to be considered by the jury in connection with all other facts, in determining the guilt or innocence of the defendant, and the degree of guilt, if you find he is guilty. (Emphasis supplied.)

The appellant requested that the court give MAI–CR 2d 3.30.1—Intoxication or Drugged Condition—Negation of Purpose or Knowledge, but the court refused to do so on the premise that second-degree murder does not require the defendant to have acted purposely or knowingly.

Appellant contends the court erred in giving Instruction No. 7 because conventional murder in the second degree requires the specific intent to kill or do great bodily harm and under § 562.076 intoxication may be considered by the jury in determining whether a defendant had the necessary mental state to commit murder in the second degree. The mental state appellant contends to be required is that the defendant have the *intent to kill* or the *intent to do great bodily harm.*

It is the state's position that conventional murder in the second degree does not require the specific intent to kill or do great bodily harm but only a general criminal intent and therefore § 562.076 is not applicable to murder in the second degree under *State v. Gullett, supra.*

The instruction given—Instruction No. 7—was held not to be erroneous in *State v. Street,* 498 S.W.2d 523, 524–25 (Mo. 1973), and *State v. Cole,* 588 S.W.2d 94, 98–9 (Mo. App. 1979). However, both cases preceded the enactment of § 562.076. *State v. Street,* was a conviction for obtaining money by fraudulent check. The court simply applied the law as it was in 1973 and held voluntary intoxication is never a defense to a criminal charge. Under the state of the law in 1973 no discussion of the mental state required to commit the offense was necessary and none was indulged in, because voluntary intoxication was simply no defense.

*State v. Cole,* was a conviction of conventional murder in the second degree and assault with intent to kill with malice aforethought. *Cole* was tried prior to January 1, 1979, the effective date of § 562.076. In *Cole,* the court noted the adoption of § 562.076 and stated it expressed no opinion as to the accuracy of the instruction, which is the same as Instruction No. 7 here, after January 1, 1979. *Id.* at 99 n. 4.

The instant offense occurred March 1, 1980, and § 562.076 was in effect at that time.

The first question is whether conventional murder in the second degree has, as one of its necessary elements, the specific intent to kill or do great bodily harm. Murder in the second degree is defined by § 565.004 as, "[a]ll other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree."

The state argues that a general criminal intent is all that is required for the commission of murder in the second degree because, the state says, § 565.004 does not specifically require that a defendant intend to kill or do great bodily harm.

At this point felony murder in the second degree must be mentioned in order that there will be no confusion about the matter. In *State v. Jasper,* 486 S.W.2d 268, 270 (Mo. banc 1972), this Court said:

At common law a person committing a homicide in the perpetration of a felony was guilty of murder. Wharton on Homicide, 3rd Ed., p. 174. In Missouri, the legislature has provided that if a homicide occurs in connection with certain felonies enumerated in § 559.010, it is murder in the first degree, whether or not the death was intended. 'The commission of, or the attempt to commit, the felony is the legal equivalent of premeditation, deliberation, and malice.' *State v. Hayes,* Mo., 262 S.W. 1034, 1037. In *State v. Robinett,* Mo., 279 S.W. 696, 700, this Court, after recognizing the effect of the predecessor statute of § 559.010, went on to say: ' * * * if the intention is

to commit some felony other than one of those enumerated in that section, such homicide, although unintentional, is murder in the second degree under section 3231 * * *.' (Footnotes omitted.)

*See also State v. Chambers,* 524 S.W.2d 826 (Mo. banc 1975).

■ Thus it is seen that the present state of the law in Missouri is that a person can be found guilty of second-degree murder under the felony murder rule *if* the homicide occurs in furtherance of a felony and in such a case the specific intent to kill is not required.[3] *See* MAI–CR 2d 15.16. The foregoing observation regarding second-degree felony murder is not a necessary holding to this case but is set forth merely to recognize that there is a form of common-law murder that is incorporated into the murder second-degree statute which does not require the specific intent to kill in order that what follows as to conventional second-degree murder under § 565.004 will not be confused with felony murder in the second degree.

Section 562.016 sets forth the code definitions of the culpable mental states.[4]

The issue raised in this point is what is the requisite culpability for conventional murder in the second degree? Section 565.-004, RSMo 1978 (formerly § 559.020), remained unchanged with the enactment of the criminal code in Missouri and as such is not a "code offense." That section, as previously mentioned, states: "[a]ll other kinds of murder at common law, not herein declared to be manslaughter or justifiable or

excusable homicide, shall be deemed murder in the second degree."

Section 556.031.2 provides:

Offenses defined outside of this code and not repealed shall remain in effect, but unless otherwise expressly provided or unless context otherwise requires, the provisions of this code shall govern the construction of any such offenses committed after January 1, 1979, as well as the construction and application of any defense to a prosecution for such offenses.

Therefore, unless a non-code offense expressly provides the requisite culpability, or the context otherwise requires a certain mental state, § 562.021.2 would be utilized to establish the requisite culpability.

Section 562.021.2 provides:

Except as provided in section 562.026 if the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, but criminal negligence is not sufficient.

Section 562.026 states that:

A culpable mental state is not required

(1) If the offense is an infraction and no culpable mental state is prescribed by the statute defining the offense; or

(2) If the statute defining the offense clearly indicates a purpose to dispense with the requirement of any culpable mental state as to a specific element of the offense.

---

**3.** Opinions may differ as to intent to kill even under a felony murder submission. See *State v. Clark,* 615 S.W.2d 55, 59 (Mo. 1981), dissenting opinions.

**4.** Section 562.016 provides as follows:

2. A person "acts purposely", or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result.

3. A person "acts knowingly", or with knowledge,

(1) with respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

4. A person "acts recklessly" or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

5. A person "acts with criminal negligence" or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

In determining the requisite culpability for second-degree murder, however, it is not necessary to turn to § 562.021.2 or § 562.-026 because § 556.031.2 would be applicable here. Section 565.004 expressly provides the definition of second-degree murder when it states "[a]ll other kinds of murder *at common law*, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree." (Emphasis supplied.) Thus, it is not necessary to turn to the code for the requisite culpability here, although the code is needed to establish if voluntary intoxication, as defined by the code, is a defense to second-degree murder, as defined by the common law.

The elements of second-degree murder are well established under Missouri law and are the (1) willful, (2) premediated, (3) killing (4) of a human being (5) with malice aforethought. *State v. Franco*, 544 S.W.2d 533, 535 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

"Willful" has often been defined as meaning "intentionally" or "knowingly" in connection with a criminal offense. *State v. Holmes*, 609 S.W.2d 132, 134 (Mo. banc 1980); *State v. Marston*, 479 S.W.2d 481, 484 (Mo. 1972); *State v. Foster*, 355 Mo. 577, 592, 197 S.W.2d 313, 321 (1946).

The state argues that MAI–CR 2d 3.30.1 would be inconsistent with the conventional second-degree murder verdict director submitted, MAI–CR 2d 15.14, which requires that the defendant "intended" to kill the victim. The fact that this verdict director requires "intended" instead of "willfully" or "knowingly" is not fatal in light of *Marston*, 479 S.W.2d at 484, which held that these three words are synonymous. Therefore, MAI–CR 2d 15.14, the verdict director for conventional second-degree murder, can be used in conjunction with MAI–CR 2d 3.30.1, the instruction that utilizes voluntary intoxication as a defense.

In *State v. Little*, 601 S.W.2d 642, 643 (Mo. App. 1980), the court held: "[T]he

essential elements of second degree murder are premeditation and malice aforethought, citing *State v. Strong*, 339 S.W.2d 759 [4–5] (Mo. 1960)." Premeditation is defined as "thought of beforehand for any length of time, however short." *Marston*, 479 S.W.2d at 484.

The intent to kill is an essential element of second-degree murder. *State v. Allen*, 530 S.W.2d 415, 420 (Mo. App. 1975), *State v. Chamineak*, 343 S.W.2d 153, 161 (Mo. 1961). This intent to kill that is required for second-degree murder is not a "general intent." A general criminal intent is found

'when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result. One cannot excuse the probable consequences of his own voluntary act by claiming that he had a mental reservation and performed the act or acts voluntarily done without an intent.' 22 C.J.S. Criminal Law § 35, quoted with approval in *State v. Anderson*, Mo. Sup. en Banc, 384 S.W.2d 591, 607 [34].

*State v. Shuler*, 486 S.W.2d 505, 509 (Mo. 1972).

This general criminal intent may suffice for a finding of second-degree *felony* murder with respect to the homicide where the intent required is the intent [5] to commit the underlying felony as was the situation in *Shuler*, and *State v. Gillam*, 588 S.W.2d 13, 16 (Mo. App. 1979). *State v. Black*, 611 S.W.2d 236, 239 (Mo. App. 1980), cited *Shuler* for stating that the proper evidentiary standard for conventional, as opposed to felony, second-degree murder is a general criminal intent. To this extent *Black* is in error.

*State v. Gullett*, 606 S.W.2d at 799–806, contains a lengthy discussion of the construction of § 562.076 which was not essential to the disposition of that case and is in disagreement with this opinion. In *Gullett*, the court affirmed a conviction of second-

---

**5.** If the intent required to commit the underlying felony is a specific intent then, of course, the provisions of § 562.076 may not be disregarded.

degree murder where MAI–CR 2d 15.14, conventional second-degree murder verdict director, and MAI–CR 2d 3.30.1, Intoxicated or Drugged Condition—Negation of Purpose or Knowledge—, were both submitted. The jury there found that the defendant's intoxication did not prevent him from intending to kill the victim and defendant argued on appeal that the state did not prove beyond a reasonable doubt that he was *not* so intoxicated he could *not* form a specific intent to kill.

The court discussed § 562.076 and ultimately stated in dicta that "it would seem it was not the intent of the legislature to make voluntary intoxication a defense to second-degree murder." *Id.* at 805. The court reasoned that when the drafters of the Missouri Criminal Code were using the Model Penal Code, § 2.08, as a basis for the Missouri statute, § 562.076, they were attempting to bring Missouri law in line with those jurisdictions and the Model Penal Code which hold that voluntary intoxication is a defense to a crime where the defendant must have a specific mental state. *Id.* at 804; *see* Comment to 1973 Proposed Code, § 562.076, V.A.M.S. (1979).

Additionally, the court in *Gullett* reasoned that in this attempt to bring Missouri law in line, on voluntary intoxication, with those other jurisdictions and the Model Penal Code, the drafters in turn meant to follow those jurisdictions and the Model Penal Code where voluntary intoxication is not a defense to second-degree murder. Those other jurisdictions and the Model Penal Code hold that voluntary intoxication is not a defense to a second-degree murder because there second-degree murder is a "general intent" crime where recklessness suffices to establish the requisite culpability. *Id.* at 804–5. In making the assumption that the drafters of the Missouri Criminal Code intended that voluntary intoxication would not be a defense to second-degree murder, the court in *Gullett* skipped the necessary and logical step of determining what the requisite intent in *Missouri* is for second-degree murder under § 565.004.

■ The court said that conventional second-degree murder is not defined by the Missouri Criminal Code, but it failed to note the importance of the retention by the drafters of the previous statute defining second-degree murder, and thereby keeping the definition of second-degree murder as "[a]ll other kinds of murder at common law ...." This retention by the drafters of the common law definition of second-degree murder evidences an intent to remain consistent with the past Missouri law, rather than to switch to the Model Penal Code definition of murder, § 210.2, where recklessness can satisfy the requisite culpability. As previously mentioned, murder in the second degree in Missouri is defined as the willful, premeditated, killing of a human being with malice aforethought. *State v. Franco,* 544 S.W.2d at 535. Thus, recklessness is not sufficient to establish the requisite culpability for second-degree murder. Recklessness is a part of manslaughter. *State v. Ruffin,* 344 Mo. 301, 307, 126 S.W.2d 218, 222 (1939).

Therefore, the analysis outlined earlier in this opinion should be followed rather than *Gullett.* The criminal code did not change the requisite elements of conventional second degree murder from what they have been virtually since Missouri became a state.

■ The Court holds that a requisite element for conviction of the crime of conventional second-degree murder under § 565.-004 is that the defendant specifically intend to kill or specifically intend to do great bodily harm. That element is a required finding in MAI–CR 2d 15.14 paragraph "Second" and is required because it is a necessary element of the offense.

■ Having decided that the conventional murder in the second degree requires the specific intent to kill or specific intent to do great bodily harm, it follows that intoxication is a defense to that particular crime as set forth in § 562.076.

■ Instruction No. 7 in this case told the jury that intoxication was not a defense and as such was prejudicially erroneous.

The court should have given MAI–CR 2d 3.30.1, and erred in failing to do so. Verdict-directing instructions submitting code offenses generally employ terms such as "knowingly" or "for the purpose of" etc., because those words are used in code offense statutes to describe the culpable mental state required for the commission of the offense. Instructions submitting non-code offenses, such as homicides, generally employ terms such as "intent" or "intended to take the life" or "intended to cause serious bodily harm" because those words and phrases describe the mental culpability required to commit the offense.

When MAI–CR 2d 3.30.1 is given as to a non-code offense where the culpable mental state is described in the verdict-directing instruction on the offense, as in MAI–CR 2d 15.14, Murder in the Second Degree—Conventional—, by the use of the phrase "intended to take the life of" or "intended to cause serious bodily harm to," MAI–CR 2d 3.30.1 should be modified so as to utilize language similar to that appearing in the verdict director.[6]

 Appellant contends the evidence was insufficient to support a conviction of conventional second-degree murder. The evidence has been set forth at the outset of this opinion and need not be repeated here. That evidence was sufficient to permit a jury to find beyond a reasonable doubt that the defendant intentionally fired the weapon and killed the deceased thereby. The evidence that defendant intentionally shot the deceased is sufficient evidence to warrant, but not compel, a finding by the jury that the defendant intended to kill or intended to do serious bodily harm to the deceased. The evidence of intoxication does not foreclose those findings but is to be considered by the jury in deciding whether appellant did intend to kill or intend to do serious bodily harm to the deceased. The point is overruled.

Other matters relating to the state's failure to disclose testimony of its witnesses concerning statements attributed to appellant are mooted as appellant is now aware of them.

In summary the Court holds:

(1) The specific intent to kill or specific intent to do serious bodily harm is a necessary element of conventional murder in the second degree. It is adequately submitted to the jury in paragraph "Second" of MAI–CR 2d 15.14.

(2) Section 562.076 is applicable to the crime of conventional second-degree murder.

The court erred in giving Instruction No. 7 and in refusing to give MAI–CR 2d 3.30.1. This error prejudiced the appellant and the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.

DONNELLY, C.J., and SEILER, MORGAN and HIGGINS, JJ., concur.

RENDLEN and WELLIVER, JJ., concur in result.

---

**6.** By way of example, the last phrase in the first paragraph of MAI–CR 2d 3.30.1 would read, "unless his intoxicated condition prevented him from acting with the intent to kill (with the intent to do serious bodily harm)." The second paragraph can also be modified accordingly.